PAUL A. BONIN, Judge.
| Joseph Narcisse, an officer in the New Orleans Police Department, appeals the decision of the New Orleans Civil Service Commission which upheld the discipline imposed upon by him by the Department. The Department demoted Officer Narcisse from Sergeant to Police Officer IV after it determined that on May 5, 2010, he failed to follow several verbal instructions from his supervisors. The Department also suspended Officer Narcisse for forty-five days after it determined that he made several untruthful statements regarding the events of May 5, 2010.
Officer Narcisse first argues on appeal that the Commission’s decision is arbitrary and capricious because there is no substantial evidence to support the requisite finding that his failure to perform his duty impaired the efficiency and orderly administration of the public service. Officer Narcisse further argues that the Commission’s decision should be reversed because it erred in determining that the discipline meted out by the Department was commensurate with the offense. Having reviewed this matter, we affirm the Commission’s decision and find that its Rruling that Mr. Narcisse’s actions impaired the efficiency of the service is supported by evidence in the record. We explain our decision in greater detail below.
I
In this Part we address the background facts and procedural history of this matter. The appellant, Joseph Narcisse, is employed as a policeman with the Department. He was first hired by the Department on October 28, 1990, subsequently promoted to Sergeant on March 15, 2002, and then later demoted to Police Officer IV effective October 6, 2010.[1] The events that led to Officer Narcisse’s demotion form the factual basis underlying this appeal.
Specifically, the record indicates that Officer Narcisse suffers from migraine headaches and was forced by his medical condition to take an extended medical leave in order to seek treatment. Officer Narcisse returned to active duty on May 4, 2010, and was assigned to the Office of Compliance, although he had previously been assigned to the Public Integrity Bureau. Officer Narcisse first met with Major John Bryson, Commander of the Office of Compliance, as well as two supervisors — Captain Brian Weiss and Lieutenant Angelo Smith — to discuss his duties.
The record indicates that all three supervising officers knew of Officer Nar-cisse’s medical condition, and that Major *695 Bryson, specifically, offered to accommodate Officer Narcisse’s medical needs if he needed help. At the meeting, Officer Nar-cisse learned that he would be assigned to Compliance, but detailed to lathe PIB in order to complete paperwork on a backlog of cases. Officer Narcisse’s work hours were to be between 8:25 am and 5:00 pm. Because Officer Narcisse had been out on sick leave for so long, and also because his pre-leave attendance had been erratic, Major Bryson informed Officer Narcisse that upon arriving at work he was to first report to Compliance, which is located in the Department’s headquarters, sign the payroll timesheet, and then relocate to PIB’s offices, which are situated at another location nearby.
Further, Major Bryson also conducted a Compliance staff meeting on May 4, 2010. At this meeting, Major Bryson announced that all Compliance personnel were instructed, because of budgetary constraints, to turn in their departmental cell phones the following day at Department headquarters. In light of this development, Major Bryson also instructed his subordinates to maintain police radio contact on the dedicated, Compliance channel when out of the office. The remainder of the May 4, 2010, workday proceeded without incident.
At approximately 9:00 am on May 5, 2010, Lieutenant Iris Carey, Officer Nar-cisse’s supervisor at PIB, called Lt. Smith to inquire as to Officer Narcisse’s whereabouts. Lt. Carey testified that her office in PIB is oriented such that she is able to see who arrives for work each day, but that Officer Narcisse never reported for duty on May 5, 2010. Lt. Smith testified that he told Lt. Carey that he had yet to see Officer Narcisse at Compliance. Shortly thereafter, Officer Narcisse called Lt. Smith, informed him that he was turning in his departmental cell phone, and asked to change his working hours. Lt. Smith declined Officer Narcisse’s request, Rnoting that he would need to get approval from Lt. Carey.[2] Lt. Smith also ordered Officer Narcisse to report to the PIB for work after he had finished turning in his departmental cell phone.
Lt. Carey testified that, shortly after her initial conversation with Lt. Smith, she called Officer Narcisse to inquire as to his whereabouts. According to Lt. Carey, Officer Narcisse told her that he was then currently at Police Headquarters turning in his departmental cell phone. Lt. Carey noted that during this conversation, Officer Narcisse also told her that he had just then been speaking with Captain Weiss in the hallway. Lt. Carey then ordered Officer Narcisse to report to PIB once he was finished turning in his departmental cell phone.
Lt. Carey then called Lt. Smith, informed him of the substance of her conversation with Officer Narcisse, and learned from Lt. Smith that Captain Weiss was not at Police Headquarters on that day. Lt. Carey then called Officer Narcisse back and ordered him to come to work at the PIB. Lt. Carey testified that Officer Nar-cisse claimed, variously, that Major Bryson and Lt. Smith had given him permission to change his working hours. Lt. Carey then contacted Lt. Smith to confirm Officer Narcisse’s assertions. Lt. Smith told Lt. Carey that he had not authorized a change in Officer Narcisse’s working hours. Lt. Smith also spoke with Major Bryson and Captain Weiss, both of whom denied changing Officer Narcisse’s working hours. *696 Subsequently, Lt. Smith attempted, unsuccessfully, to [ ^contact Officer Narcisse using the Compliance channel on the departmental radio system.
At approximately 11:00 am, Lt. Carey again called Officer Narcisse to inform him that he did not have authorization to alter his work schedule, inquired as to his whereabouts, and ordered him to report for duty at the PIB. According to Lt. Carey, Officer Narcisse told her that he was suffering from a migraine and needed to get a shot. Lt. Carey gave Officer Narcisse permission to seek medical attention and ordered him to report to PIB immediately thereafter.
At approximately 2:45 pm, Officer Nar-cisse called Lt. Smith, told him that he was at home suffering from a migraine, and asked to change his work hours. Lt. Smith denied the request. Officer Nar-cisse then asked Lt. Smith to “carry him sick” for the day. Lt. Smith approved the request, but subsequently contacted Captain Weiss for instructions. Captain Weiss told Lt. Carey to place Officer Narcisse on leave without pay from 8:25 am to 2:45 pm, and on sick leave from 2:45 pm to 5:00 pm.
Subsequently, Lieutenant Carl Perilloux was tasked with conducting an internal investigation into Officer Narcisse’s actions and statements. Lt. Perilloux concluded that Officer Narcisse committed seven violations of departmental rules. Specifically, Lt. Perilloux concluded that Officer Nar-cisse violated Rule 2, Moral Conduct, paragraph 3, Truthfulness, when he: 1) told Lt. Carey that he was speaking with Captain Weiss in the hallway at Department headquarters; 2) told Lt. Carey that he had permission from Major Bryson to change his working hours; 3) | fitold Lt. Carey that he had permission from Lt. Smith to change his working hours; and 4) made inaccurate and misleading statements in his administrative statement when he claimed that he reported for duty at the PIB, and logged into a PIB computer, on May 5, 2010. Lt. Perilloux also concluded that Officer Narcisse also violated Rule 4, Performance of Duty, paragraph 2, Instructions from an Authoritative Source, when he: 1) failed to comply -with Major Bryson’s order that he first report to Compliance; 2) failed to comply with Lt. Smith’s and Lt. Carey’s orders to report for duty at PIB on May 5, 2010, once he had turned in his departmental cell phone; and 3) failed to follow instructions from Captain Weiss to carry and monitor his police radio on the Compliance channel.
As noted, Officer Narcisse was issued a forty-five day suspension and demoted from Sergeant to Police Officer IV. Officer Narcisse appealed the punishment, and the matter was assigned to the Civil Service Commission. On February 10, 2011, an evidentiary hearing was conducted before a Hearing Examiner. Captain Weiss, Lt. Smith, Lt. Carey, and Lt. Perilloux testified for the Department. Officer Nar-cisse testified on his own behalf. The Hearing Examiner subsequently rendered a report wherein he recommended that the Commission overturn the Department’s suspension and demotion of Officer Nar-cisse. The Commission, on the other hand, rendered a decision on June 1, 2012, denying Officer Narcisse’s appeal. Officer Narcisse subsequently sought timely review of the Commission’s ruling with this Court.
Jil
We first address the precepts which control our appellate review of Mr. Narcisse’s appeal of the Commission’s decision to uphold the appointing authority’s disciplinary action. “No person who has gained permanent status in the classified ... city service shall be subjected to disciplinary action except for cause expressed in writ *697 ing.” La. Const. art. X, § 8(A); La. Const, art. X, § 1(B). New Orleans police officers are included in the protection guaranteed by this provision. Walters v. Dep’t of Police of New Orleans, 454 So.2d 106, 112 (La.1984).
“Legal cause exists whenever an employee’s conduct impairs the efficiency of the public service in which the employee is engaged.” Cittadino v. Dep’t of Police, 558 So.2d 1311, 1315 (La.App. 4th Cir. 1990). The employee’s failure to perform the task must “affect the efficient operation of public service.” Fisher v. Dept. of Health and Human Resources, Office of Human Devp., 517 So.2d 318, 321 (La.App. 1st Cir.1987). Thus, “[t]he appointing authority must prove by a preponderance of the evidence the occurrence of the complained of activity and that the conduct impaired the efficient operation of the public service.” Barquet v. Dep’t of Welfare, 620 So.2d 501, 505 (La.App. 4th Cir. 1993) (emphasis added). See also Cure v. Dep’t of Police, 07-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094, citing Marziale v. Dep’t of Police, 06-0459, p. 10 (La.App. 4 Cir. 11/8/06), 944 So.2d 760, 767.
Mr. Nareisse timely exercised his constitutional right to an appeal from the appointing authority’s disciplinary action to the New Orleans Civil Service | ^Commission. La. Const. art. X, § 8(A). The Commission has “the exclusive power and authority to hear and decide all removal and disciplinary cases.” La. Const. art. X, § 12(B); Pope v. New Orleans Police Dep’t, 04-1888 (La.App. 4 Cir. 4/20/05), 903 So.2d 1. Before the Commission, “the burden of proof on appeal, as to the facts, shall be on the appointing authority.” La. Const. art. X, § 8(A) (emphasis added); Walters, 454 So.2d at 112-113.
The Commission’s duty is to decide independently from the facts presented to it whether the appointing authority has good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed is commensurate with the infraction. Walters, 454 So.2d at 113-114. Although the Commission’s function is to effectuate the constitutional safeguards and protections for civil servants in the classified public service, equally important, according to the Louisiana Supreme Court, is “the appointing authority’s duty to undertake disciplinary action against an employee for legal cause that impairs the efficiency of the public service.” Mathieu v. New Orleans Public Library, 09-2746, p. 5 (La.10/19/10), 50 So.3d 1259, 1262.
The Commission assigned the appeal to its referee: “[The Commission] may appoint a referee to take testimony, with subpoena power and power to administer oaths to witnesses.” La. Const. Art. X, § 12(B). After hearing testimony and considering other evidence, the referee issued a written report. Other than the eviden-tiary proceeding before its referee, the Commission did not conduct any 19further evidentiary hearings. The Commission’s ruling indicates that all three of the reviewing Commissioners concurred in the denial of Mr. Narcisse’s appeal.
The Commission’s decision is subject to appellate review on any question of law or fact, determining if its order was arbitrary, capricious, or characterized by an abuse of discretion. La. Const. Art. X, § 12(B); Barquet, 620 So.2d at 505; Cure, 07-0166, p. 2, 964 So.2d at 1095; Walters, 454 So.2d at 114. When there is no rational basis for the Civil Service Commission’s action, its decision is arbitrary and capricious. Bannister v. Dep’t of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647.
The judicial review function in a matter appealed from a civil service commission is “multifaceted.” Walters, 454 *698 So.2d at 113-114. We review the Commission’s procedural decisions and interpretations of law under our traditional plenary function of insuring procedural rectitude and reviewing questions of law de novo. Id. But, because of the constitutional implications arising from the distinct functions of the Commission and of us as a reviewing court, we are more circumspect in our review of other aspects of the Commission’s decision. Id. Thus, in reviewing the commission’s findings of fact, the court should not reverse or modify such a finding unless it is clearly wrong or manifestly erroneous. Id.
 Specifically with respect to the issues raised by Mr. Narcisse in this appeal, “[i]n judging the commission’s exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the court should not modify the commission’s order unless it is |inarbitrary, capricious, or characterized by abuse of discretion.” Id. In practice, we afford great deference to the Commission’s ruling supporting the decision of the appointing authority. See Serignet v. Dep’t of Health, 08-0469, p. 10 (La.App. 4 Cir. 5/20/09), 15 So.3d 1019, 1025. As we are recently reminded by the Louisiana Supreme Court, neither the Commission nor a reviewing court should “second-guess” an appointing authority’s decisions. See Lange v. Orleans Levee District, 10-0140, p. 17 (La.11/30/10), 56 So.3d 925, 936. The Commission and a reviewing court may intervene only when the appointing authority’s decisions are arbitrary and capricious or characterized by an abuse of discretion. Lange, 10-0140, p. 17, 56 So.3d at 936. Moreover, neither the Commission nor the reviewing court may serve as a de facto pardon board. Id. “[SJympathy is not a legal standard.” Id.
Ill
In this Part we apply these precepts to the Commission’s decision, which, as we have noted, fully upheld the Department’s actions when it found that there was legal cause for the discipline and that the punishments imposed were not arbitrarily excessive.
A
We first examine the Commission’s finding that the Department proved by a preponderance of the evidence that Officer Narcisse committed seven violations of applicable Department rules. We do not find the Commission’s conclusions to be arbitrary, capricious, or lacking rational bases in fact. As noted, the Commission | n affirmed the Department’s conclusion that Officer Narcisse committed four violations of Rule 2, Moral Conduct, paragraph 3, Truthfulness. The applicable departmental rule provides:
Employees are required to be truthful at all times, in their spoken, written, or electronic communications, whether under oath or not, in all matters and official investigations relating to the scope of their employment and operations of the Department, as follows:
a. employees shall truthfully state the facts in any oral, written, or electronic communications;
b. employees shall not willfully or negligently make any false, misleading, or incorrect oral, written, or electronic communications;
c. employees shall not willfully or negligently withhold relevant information of which they have knowledge, from any oral, written, or electronic communication;
d. employees shall truthfully answer all questions directed to them on the order of the Superintendent of Police, the Superintendent’s des- *699 ignee, a superior officer, or any judicial, departmental, or other official investigative body.
First, the Commission concluded that the Department proved by a preponderance of the evidence that Officer Narcisse lied when he told Lt. Carey that he was speaking with Captain Weiss in the hallway at Department headquarters. Specifically, Lt. Carey testified that she called Officer Narcisse to inquire as to his whereabouts. During the course of their conversation, Officer Narcisse stated that he was at Department headquarters and had been in the hallway speaking with Captain Weiss. Shortly thereafter, Lt. Carey spoke with Lt. Smith, who informed her that Captain Weiss was not in the building on that day.
|12Officer Narcisse, on the other hand, denied making this statement to Lt. Carey, and instead testified that he merely mentioned to her, mistakenly, that he thought he saw Captain Weiss in the hallway. We note, however, that Officer Narcisse’s testimony at the administrative hearing contradicts the administrative statement he made to Lt. Perilloux. Specifically, Officer Narcisse denied making the statement, and told Lt. Perilloux that he could not have made that statement to Lt. Carey because this conversation with Lt. Carey occurred when he was at home where he could not have seen Captain Weiss. Having reviewed the record, we cannot say that the Commission’s finding that the Department proved this violation of Rule 2 by a preponderance of the evidence to be arbitrary, capricious, or lacking a rational basis in fact.
Second, the Commission also concluded that the Department proved by a preponderance of the evidence that Officer Nar-cisse lied when he told Lt. Carey that he had permission from Major Bryson to change his working hours. Third, the Commission likewise concluded that the Department also met its burden of proving that Officer Narcisse lied when he told Lt. Carey that he had permission from Lt. Smith to change his working hours. As noted, Officer Narcisse’s work schedule was established on May 4, 2010, when he met with Major Bryson, Captain Weiss, and Lt. Smith. However, Lt. Carey testified at the administrative hearing that Officer Narcisse told her on May 5, 2010, that Major Bryson authorized a change in his work schedule. Lt. Carey testified that she then contacted Lt. Smith, who spoke with Captain Weiss about the matter. Captain l1sWeiss called Major Bry-son, who was out of town on May 5, 2010. Lt. Smith testified that Major Bryson stated that he did not authorize a change in Officer Narcisse’s work schedule. Captain Weiss also denied authorizing a change in Officer Narcisse’s work schedule. Lt. Smith relayed this message to Lt. Carey, who, in turn, relayed this information to Officer Narcisse. Lt. Carey testified that Officer Narcisse then stated that Lt. Smith authorized a change in his work schedule. Lt. Carey again spoke with Lt. Smith, who denied authorizing such a change.
At the administrative hearing, Officer Narcisse denied telling Lt. Carey that either Major Bryson or Lt. Smith authorized a change to his work schedule. Rather, Officer Narcisse testified that Major Bry-son, knowing of his medical condition, stated at the May 4, 2010, meeting that he would be willing to do “anything to help” Officer Narcisse in his return to work. Officer Narcisse also testified that he merely informed Lt. Carey of this statement, noting to her that no change had been made because it would require further discussions.
The record shows clearly that the Commission was presented with two conflicting accounts of the conversations that took *700 place on May 5, 2010. The Commission chose to accept the testimonies of Captain Weiss, Lt. Smith, and Lt. Carey over that of Officer Narcisse. Having reviewed the record, we cannot say that the Commission’s finding that the Department proved these violations of Rule 2 by a preponderance of the evidence to be arbitrary, capricious, or lacking rational bases in fact.
| i/The Commission further concluded that the Department proved by a preponderance of the evidence that Officer Nar-cisse made inaccurate and misleading comments in his administrative statement to Lt. Perilloux when he claimed that he reported for duty at the PIB, and logged into a PIB computer, on May 5, 2010. Specifically, Officer Narcisse told Lt. Peril-loux that, contrary to Lt. Carey’s claim, he did in fact report for duty at the PIB on May 5, 2010, after first turning in his departmental cell phone at police headquarters. Officer Narcisse told Lt. Peril-loux that he arrived at the PIB at some point between 8:25 am and 9:00 am. However, this statement is contradicted by the administrative hearing testimony of Lt. Smith and Lt. Carey, both of which testified to speaking to Officer Narcisse at approximately 9:00 am. Lt. Smith and Lt. Carey both testified that Officer Narcisse told them that he was at headquarters turning in his departmental cell phone. Further, Officer Narcisse himself testified at the administrative hearing that he spoke with Lt. Carey at approximately 9:00 am while he was at headquarters.
At the administrative hearing, Officer Narcisse testified that he reported for duty at the PIB and logged onto an unoccupied work computer to begin working on his files. As noted, Lt. Carey testified that her office in the PIB is oriented such that she is able to see who arrives for work each day, but that she never saw Officer Narcisse report for duty on May 5, 2010. Officer Narcisse testified at the administrative hearing that he did report for duty, but that Lt. Carey must not have seen him at the time. However, there is no indication that anyone saw Officer 11fiNarcisse at the PIB on the morning of May 5, 2010. Moreover, Lt. Carey testified that her various phone conversations with Officer Nar-cisse took place between approximately 9:00 am and 11:00 am. Officer Narcisse, while he did not deny that these phone conversations took place, nevertheless testified that he arrived at the PIB sometime between 9:30 am and 10:00 am and left for lunch at some point between 11:00 am and 11:30 am. The record, therefore, suggests that Lt. Carey and Officer Narcisse were on the phone discussing Officer Narcisse’s absence at times that Officer Narcisse later claimed to have been at work in the PIB.
Further, in his administrative statement, Officer Narcisse told Lt. Perilloux that he could confirm his presence at the PIB by checking the departmental computer’s log-in records. Lt. Perilloux checked the computer log-in records and found no indication of Officer Narcisse having logged onto a computer. At the administrative hearing, Officer Narcisse testified that he did not need to technically log onto a PIB computer on May 5, 2010, because he ended up using a computer that another officer had logged onto and left open for use.
The record, again, shows that the Commission was presented with two conflicting accounts of the events that took place on May 5, 2010. The Commission chose to accept the testimony of Lt. Carey and the findings and testimony of Lt. Perilloux over that of Officer Narcisse. Having reviewed the record, we cannot say that the Commission’s findings that the Department proved these violations of Rule 2 by a preponderance of the evidence to be *701 arbitrary, capricious, or lacking rational bases in fact.
1 Additionally, the Commission affirmed the Department’s conclusion that Officer Narcisse committed three violations of Rule 4, Performance of Duty, paragraph 2, Instructions from an Authoritative Source. The applicable departmental rule provides:
An employee shall professionally, promptly, and fully abide by or execute instructions issued from any authoritative source, including any order relayed from a superior by an employee of the same or lesser rank. If the instructions are reasonably believed to be in conflict with the Rules and Procedures of the Department or other issued instructions, this fact shall respectfully be made known to the issuing authority. If the issuing authority elects to insist upon execution of the instructions which are reasonably believed to be in conflict with Department Rules and Procedures, the employee receiving the instructions shall have the right to request and is entitled to receive, IMMEDIATELY, said instructions in writing, except in cases of emergency as determined by the supervisor. The issuing authority shall be held responsible should any conflict materialize; however, no instructions shall be issued or executed which are in violation of law.
Specifically, the Commission concluded that Officer Narcisse violated this rule when he: 1) failed to comply with Major Bryson’s May 4, 2010, order that he report to work at PIB on the morning of May 5, 2010; 2) failed to comply with Lt. Smith’s and Lt. Carey’s orders to report for duty at PIB on May 5, 2010, after he had turned in his departmental cell phone; and 3) failed to follow instructions from Captain Weiss to carry and monitor his police radio on the Compliance channel.
We have already discussed the facts surrounding Officer Narcisse’s failure to report for duty at the PIB on May 5, 2010, and we find no fault in the Commission’s determination with respect to these violations. With respect to the allegation that Officer Narcisse failed to carry and monitor his police radio on the Compliance channel, the record indicates that at the May 4, 2010 staff meeting ] 17Major Bryson ordered Compliance personnel to turn in their departmental cell phones on May 5, 2010. Major Bryson also ordered all compliance officers to carry and monitor their police radios on the Compliance channel. At the administrative hearing, Lt. Smith testified that on May 5, 2010, he attempted, to no avail, to contact Officer Narcisse on several occasions via the Compliance channel. Lt. Perilloux testified that he recalled hearing Lt. Smith’s fruitless calls to Officer Narcisse.
Lt. Perilloux also testified that as part of his investigation he asked Mr. Terry Wag-uespack, of the Louisiana Department of Public Safety, to ascertain whether Officer Narcisse’s radio was on or off on May 5, 2010.[3] Lt. Perilloux stated that Mr. Wag-uespack’s records confirmed Lt. Smith’s calls to Officer Narcisse and the fact that Officer Narcisse’s radio remained inactive, but they could not reveal whether Officer Narcisse’s police radio had been on or off on May 5, 2010. Officer Narcisse testified that his radio was active on May 5, 2010, but that it did not receive Lt. Smith’s calls due to the fact that he was in his apartment, which interfered with the police radio signal. Clearly, the Commission was *702 presented with two conflicting accounts of the events that took place on May 5, 2010. The Commission chose to accept the testimony of Lt. Smith and the findings and testimony of Lt. Perilloux over that of Officer Narcisse. Having reviewed the record, we cannot say that the Commission’s findings that the Department proved | isthese violations of Rule 4 by a preponderance of the evidence to be arbitrary, capricious, or lacking rational bases in fact.
Moreover, we observe that the Department concluded that these proven violations impaired the efficiency of the public service in which Officer Narcisse was engaged. See Newman v. Dep’t of Fire, 425 So.2d 758, 754 (La.1983); Cornelius v. Dep’t of Police, 07-1257, p. 6 (La.App. 4 Cir. 3/19/08), 981 So.2d 720, 724; Cittadino, 558 So.2d at 1315. The Department established that Officer Narcisse’s dishonesty and failure to follow orders resulted in violations of core departmental values. We cannot say that these violations did not bear a real and substantial relationship to the efficient operation of the appointing authority. See Cure, 07-0166, p. 2, 964 So.2d at 1094.
B
We next address Officer Nar-cisse’s contention that the Commission’s ruling should be reversed because it erred in determining that the discipline meted out by the Department was commensurate with the offense. In order to determine whether the appointing authority properly imposed disciplinary action against Officer Narcisse, we must determine whether the punishment imposed was commensurate with the offenses. Staehle v. Department of Police, 98-0216 (La.App. 4 Cir. 11/18/98), 723 So.2d 1031, 1034.
The Commission affirmed the Department’s conclusion that Officer Narcisse’s seven infringements of departmental rules resulted in a violation of Rule |inIX, Section 1, paragraph 1.1, of the Rules of the Civil Service Commission for the City of New Orleans. This rule provides as follows:
1.1 When an employee in the classified service is unable or unwilling to perform the duties of his/her position in a satisfactory manner, or has committed any act to the prejudice of the services, or has omitted to perform any act it was his/her duty to perform, or otherwise has become subject to corrective action, the appointing authority shall take action warranted by the circumstances to maintain the standards of effective service. The action may include one or more of the following:
(1) removal from the service.
(2) involuntary retirement.
(3) reduction in pay within the salary range for the employee’s classification, subject to the provisions of Rule IV, Section 8.
(4) demotion to any position of a lower classification that the employee is deemed by the appointing authority and the Director to be competent to fill, accompanied by a reduction in pay, which is within the salary range for the lower classification, subject to the provisions of Rule IV, Section 8.
(5) suspension without pay not exceeding one hundred twenty (120) calendar days.
(6) fine.
Considering the nature, and multiplicity, of the charges sustained against Officer Narcisse, we find that the record establishes a rational basis for the Commission’s finding that the punishment imposed was commensurate with the offense. Accordingly, we conclude that Officer Narcisse’s forty-five day suspension and demotion *703 from Sergeant to Police Officer IV was warranted.
l?nDECREE
Accordingly, we affirm the Commission’s denial of Officer Narcisse’s appeal of his forty-five day suspension and demotion from Sergeant to Police Officer IV. All costs of this appeal are assessed to Joseph Narcisse. See La. C.C.P. art. 2164.
AFFIRMED
BELSOME, J., dissents and assigns reasons.

. Officer Narcisse has had only one other disciplinary issue since becoming a police officer, which resulted in a brief suspension for working one hour of unauthorized overtime in the aftermath of Hurricane Katrina.

. Lt. Smith also testified that on May 5, 2010, Officer Narcisse also stated to him that Major Bryson authorized a change in his work hours. However, it is not clear from the record when this statement was made.

. Lt. Perilloux testified that the Louisiana Department Public Safety and Corrections maintains the state law enforcement radio system.