Judge Joy Cossich Lobrano
This is a civil service case. Plaintiff/appellant, Quinetta Rivet ("Rivet"), appeals the January 9, 2018 decision of the Civil Service Commission ("CSC" or *115 "Commission") upholding the suspension and termination of her employment by the appointing authority, the New Orleans Police Department ("NOPD"). For the reasons that follow, we affirm the decision of the CSC.
Rivet was employed by the NOPD as a police technician and had permanent status as a classified employee. She was not a commissioned police officer. She worked in an office where her job duties included answering telephone calls for the NOPD's child abuse unit. Rivet was disciplined for (1) leaving work without the permission of her supervisor, Sergeant Arnold Williams ("Sgt. Williams"); and (2) providing a false statement - that Sgt. Williams had given Rivet permission to leave work - to Sergeant Trinell Franklin ("Sgt. Franklin") of the Public Integrity Bureau ("PIB"), during Sgt. Franklin's disciplinary investigation of Rivet's conduct.
Following a pre-discipline hearing, on July 9, 2015, Superintendent Michael Harrison issued a discipline letter to Rivet, stating that she violated NOPD internal rules relative to performance of duty, professionalism, and truthfulness. For the violations concerning performance of duty and professionalism, Rivet received three suspensions of three days each, for a total of nine days. For the violation concerning truthfulness, Rivet's employment with the NOPD was terminated.
On July 10, 2015, Rivet appealed her termination to the CSC. The CSC hearing went forward on July 28, 2016, July 20, 2017, and August 8, 2017.[1] On December 13, 2017, the hearing examiner issued his report in which he recommended that the appointing authority met its burden of proof and established by a preponderance of the evidence that (1) Rivet was disciplined for cause; (2) Rivet's conduct impaired the efficiency of the public service; (3) the discipline imposed was commensurate with the offense; and (4) Rivet was not denied due process. On January 9, 2018, the CSC denied Rivet's appeal, upholding her suspension and termination. This appeal followed.
This Court has summarized the governing standard of review and applicable legal principles as follows:
• An employer cannot subject a permanent classified civil service employee to disciplinary action except for cause expressed in writing. La. Const. Art. X, § 8 (A); Walters v. Dep't of Police , 454 So.2d 106, 112 (La. 1984).
• Cause for discipline of an employee exists whenever the employee's conduct impairs the efficiency of the public service in which the employee is engaged. Cittadino v. Dep't of Police , 558 So.2d 1311, 1315 (La. App. 4th Cir. 1990).
• "The appointing authority is charged with the operation of his or her department and it is within his or her discretion to discipline an employee for sufficient cause." Whitaker v. New Orleans Police Dep't , 03-0512, p. 5 (La. App. 4 Cir. 9/17/03), 863 So.2d 572, 575.
• The employee may appeal from such a disciplinary action to the Commission. On appeal, the Commission has a duty to decide independently from the facts presented whether the appointing authority had good and lawful cause for taking the disciplinary action and, if so, whether the punishment imposed was commensurate *116 with the infraction. Walters , 454 So.2d at 113.
• "The authority to reduce a penalty can only be exercised if there is insufficient cause." Whitaker , 03-0512 at p. 4, 863 So.2d at 575 (citing Branighan v. Dep't of Police , 362 So.2d 1221, 1223 (La. App. 4 Cir. 1978) ). Further, a legal basis for any change in a disciplinary action can only be that sufficient cause for the action was not shown by the appointing authority. Branighan , 362 So.2d at 1221. The Commission may not merely substitute its judgment for the appointing authority's judgment. Whitaker , 03-0512 at p. 5, 863 So.2d at 576.
• On appeal, the standard of review is established by the constitutional rule that the Commission's decision is subject to review on any question of law or fact. La. Const. art. X, § 12. A multifaceted standard of appellate review applies. First, as in other civil matters, deference must be given to the Commission's factual findings, which should not be disturbed unless manifestly erroneous or clearly wrong. Second, in evaluating the Commission's determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the appellate court should not modify the Commission's decision unless it is arbitrary, capricious, or characterized by an abuse of discretion. Bannister [v. Department of Streets] , 95-404 at p. 8, 666 So.2d [641] at 647 [ (La. 1996) ]. Arbitrary or capricious means there is no rational basis for the action taken by the Commission. Id.
Abbott v. New Orleans Police Dep't , 2014-0993, pp. 7-8 (La. App. 4 Cir. 2/11/15), 165 So.3d 191, 197 (quotation omitted).
On appeal, Rivet does not challenge her suspensions. Rather, she seeks appellate review of her termination, raising the following three issues: (1) whether there was legal cause for her discipline; (2) whether her discipline was commensurate with the offense; and (3) whether she was afforded due process.
We first address Rivet's argument that the CSC erred in finding legal cause existed for her discipline. In an appeal before the CSC, "[t]he appointing authority has the burden of proving, by a preponderance of the evidence that the complained-of activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority." Cure v. Dep't of Police , 2007-0166, p. 2 (La. App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094 (citing Marziale v. Dep't of Police , 2006-0459, p. 10 (La. App. 4 Cir. 11/8/06), 944 So.2d 760, 767 ).
The CSC upheld NOPD's termination of Rivet's employment for violation of the Truthfulness Rule, which is found in NOPD Rule 2, Paragraph 3, and provides as follows:
Employees are required to be honest and truthful at all times, in their spoken, written or electronic communications. Truthfulness shall apply when an employee makes a materially false statement with the intent to deceive. A statement is material when, irrespective of its admissibility under the rules of evidence, it could have affected the course or outcome of an investigation or an official proceeding, whether under oath or not, in all matters and official investigations relating to the scope of their employment and operations of the Department as follows:
*117 (a) employees shall truthfully state the facts in any oral, written, or electronic communication;
(b) employees shall not willfully or negligently make any false, misleading, or incorrect oral, written, or electronic communication;
(c) employees shall not willfully or negligently withhold relevant information of which they have knowledge, from any oral, written, or electronic communication;
(d) employees shall truthfully answer all questions directed to them on the order of the Superintendent of Police, the Superintendent's designee, a superior officer, or any judicial, departmental, or other official investigative body.
In rendering its decision, the CSC considered the following testimony to be pertinent. Sgt. Williams testified that, on the morning of April 17, 2015, Rivet was the only employee on duty in the child abuse unit's office.[2] Sgt. Williams was in the office but was off duty and completing paperwork during his off-duty time. Shortly after Rivet arrived at work, she proceeded to Sgt. Williams' office, seeking permission to leave work to meet a repairman who was at her home. Sgt. Williams was adamant that he denied Rivet permission to leave work. Rather, he explained that he told Rivet that she could not leave work because she was the only person on duty, and someone needed to be in the office to answer the telephones. After he discovered that Rivet left the office, Sgt. Williams called her on her cell phone and repeated that she did not have permission to leave work, to which Rivet responded "Well, I'm doing what I have to do. It's an emergency." Rivet later returned to work after having been absent for three hours.
Sergeant Randi Gant ("Sgt. Gant") testified that, on April 17, 2015, Rivet came into Sgt. Gant's office, visibly upset, and stated that she "wanted to talk to someone she could trust." Rivet was concerned that she was "going to get written up." Rivet then told Sgt. Gant that Sgt. Williams denied Rivet's request to take an early lunch to meet a repairman, but she left anyway.
Rivet testified that when she asked Sgt. Williams for permission to leave work, he told her to "go, go," and she interpreted his response as permission to leave work. Rivet did not complete any emergency furlough paperwork. She did not recall which repairman had called her or what kind of emergency repair was done to her home. She failed to explain why she did not return to the office at the time that Sgt. Williams called to tell her she did not have permission to leave work.
Sgt. Franklin testified that she was assigned Rivet's disciplinary investigation and took several administrative statements. Sgt. Williams gave a statement that he denied Rivet permission to leave work. Sgt. Gant gave a statement that Rivet admitted that Sgt. Williams denied Rivet permission to leave work but Rivet left work anyway. Rivet, however, gave a statement that Sgt. Williams did not refuse her request to leave work and told her to "go, go."[3] Sgt. Franklin concluded that Rivet violated the Truthfulness Rule by giving an administrative statement that Sgt. Williams "gave her permission when in fact he did not."
*118 Rivet argues that the Truthfulness Rule does not apply; her statement was not "material" because it did not affect the outcome of any investigation. We disagree. According to the Truthfulness Rule a "statement is material when it could have affected the course or outcome of an investigation." (Emphasis added.) Rivet was disciplined specifically for a statement she made to Sgt. Franklin during the investigation of Rivet's conduct. Rivet's statement contradicted statements by Sgt. Williams and Sgt. Gant. There is ample support in the record for the NOPD's and CSC's findings that Rivet reported untrue facts to Sgt. Franklin that could have affected Sgt. Franklin's investigation.
Rivet also claims that she did not violate the Truthfulness Rule because she had no "intent to deceive." Rivet's argument focuses only on her conversation with Sgt. Gant, which we find does not absolve Rivet of any intent to deceive Sgt. Franklin in her investigation. Rather, Rivet's statement to Sgt. Franklin substantiates the CSC's finding that Rivet intended to deceive Sgt. Franklin. The CSC reviewed the testimony of all witnesses and deferred to the hearing officer's assessment that Rivet was not a credible witness. Again, the record supports the CSC's conclusion that "Rivet understood that she did not have permission to leave her post, but did so anyway because she felt her personal emergency took preceden[ce] over her professional responsibilities." Rivet's argument lacks merit.
We next turn to Rivet's argument that the CSC erred in finding the discipline was commensurate with the offense. The section of the NOPD Procedural Manual that contains the Disciplinary Hearings and Penalty Schedule (the "NOPD penalty matrix") was introduced into evidence at the CSC hearing. In the NOPD penalty matrix, the only penalty provided for violation of the Truthfulness Rule is termination of employment. Rivet argues, however, that termination was an overly harsh penalty under the facts of her case. She contends that this was her first discipline in her nineteen-year career with the NOPD and that she was accused of a "minor" offense. She also complains that she was a civilian employee who worked in an office and was not a commissioned police officer. According to Rivet's argument, factors other than the NOPD penalty matrix should have been considered in imposing her discipline.
Citing to Honore' v. Dep't of Pub. Works , 2014-0986, p. 17 (La. App. 4 Cir. 10/29/15), 178 So.3d 1120, 1131, Rivet argues that the CSC should have considered "the employee's work ethic, prior disciplinary records, job evaluations, and any grievances filed by the employee" in determining whether termination was an excessive penalty. We find Honore distinguishable from the facts before us. Honore did not involve an NOPD employee. As this Court explained in Stevens v. Dep't of Police , 2000-1682, p. 8 (La. App. 4 Cir. 5/9/01), 789 So.2d 622, 627 (internal citations omitted):
The public puts its trust in the police department as a guardian of its safety, and it is essential that the appointing authority be allowed to establish and enforce appropriate standards of conduct for its employees sworn to uphold that trust. Indeed, the Commission should give heightened regard to the appointing authorities that serve as special guardians of the public's safety and operate as quasi-military institutions where strict discipline is imperative.
In its decision, the CSC found that, despite Rivet's role as a civilian employee, rather than a commissioned police officer:
*119 ...NOPD has the responsibility to demand that all of its employees conduct themselves according to the highest levels of integrity. Even administrative and ministerial tasks within NOPD's operations involve (or have the potential to involve) criminal investigations. NOPD's mission is to provide safety and security to the residents of New Orleans, and to do so ethically and in a way that promotes community. It cannot accomplish this mission if the residents do not trust NOPD personnel. Finally, the undersigned Commissioners have adopted the hearing examiner's finding that Appellant [Rivet] was evasive and not credible during her testimony. Appellant was under oath during her testimony and was not forthcoming or honest.
Based upon NOPD's role in the community, the undersigned Commissioners do not believe that dismissal is an arbitrary or capricious level of discipline for employees who are purposefully deceitful.
We find this reasoning persuasive.[4]
Moreover, the infraction in Honore carried a range of available penalties; the factors examined in Honore are intended to evaluate the appropriateness of a particular penalty within that range of penalties. Thus, the question before this Court in Honore was whether the CSC abused its discretion in upholding the severest of those penalties. Here, however, no range of penalties applies to violations of the Truthfulness Rule. The NOPD, in its discretion as appointing authority, adopted its penalty matrix in which termination is the only penalty for violation of the Truthfulness Rule.[5] Chief Rannie Mushatt, Deputy Superintendent of the Investigative Support Bureau, explained in his testimony that Rivet was terminated because termination is the only penalty for violation of the Truthfulness Rule.
As this Court stated in Pope v. New Orleans Police Dep't , 2004-1888, pp. 7-8 (La. App. 4 Cir. 4/20/05), 903 So.2d 1, 5 (quoting James v. Sewerage & Water Bd. of New Orleans , 505 So.2d 119, 121 (La. App. 4th Cir.1987) :
It is not the job of the Commission to decide who should be disciplined how. The appointing authority is charged with the operation of his department. He is the one who must run the department, an obviously necessary part of which is dismissing or disciplining employees. While he may not do so without cause, he may, and indeed must, within the exercise of sound discretion, dismiss or discipline an employee for sufficient cause. The Commission is not charged with such operation or such disciplining.
In reviewing an appointing authority's disciplinary decisions, the CSC's "authority to reduce a penalty can only be exercised if there is insufficient cause for imposing the greater penalty." Pope , 2004-1888, p. 5, 903 So.2d at 5 (citing Branighan , 362 So.2d at 1222 ).
*120 While Rivet encourages this Court to undertake a form of "downward departure" with respect to her discipline, we have no authority to do so in this case. It is well-settled that this Court should not modify the discipline imposed by the CSC unless it was "arbitrary, capricious, or characterized by an abuse of discretion." Cure , 2007-0166, p. 2, 964 So.2d at 1094-95 (citation omitted). A decision by the CSC is "arbitrary or capricious" only if there is no rational basis for the action taken by the CSC. Id. , 2007-0166, p. 2, 964 So.2d at 1095 (quotation omitted). This Court has explained:
In practice, we afford great deference to the CSC's ruling supporting the decision of the appointing authority. See Serignet v. Dept. of Health , 08-0469, p. 10 (La. App. 4 Cir. 5/20/09), 15 So.3d 1019, 1025. Neither the CSC nor a reviewing court should "second-guess" an appointing authority's decisions. See Lange v. Orleans Levee District , 10-0140, p. 17 (La. 11/30/10), 56 So.3d 925, 936.... Moreover, neither the CSC nor the reviewing court may serve as a de facto pardon board. Id. "[S]ympathy is not a legal standard." Id.
Byrd v. Dep't of Police , 2012-1040, p. 10 (La. App. 4 Cir. 2/6/13), 109 So.3d 973, 980.
Despite Rivet's lengthy career with the NOPD and lack of prior discipline, we find no law or evidence in the record that would permit us to reach the conclusion that Rivet seeks. While termination seems harsh, this penalty is specifically provided for in the NOPD penalty matrix.[6] The NOPD acted within its authority to apply its own penalty matrix and in determining that the NOPD cannot employ workers who make false statements. Considering the NOPD's role in the community and the necessity for strict discipline in quasi-military institutions like police departments, we cannot say that the CSC acted arbitrarily or capriciously in upholding the decision of the NOPD.
Lastly, we address Rivet's due process argument. Rivet claims that she had insufficient notice of the dates of her conduct or the reasons for which she was disciplined. This Court, relying on the United States Supreme Court's ruling in Cleveland Bd. of Educ. v. Loudermill , 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), has stated that "before a public employee ... is dismissed, she must be given notice and afforded an opportunity to respond to the charges against her." Webb v. Dep't of Safety & Permits , 543 So.2d 582, 582 (La. App. 4th Cir. 1989). "The [U.S. Supreme Court's] holding was based upon the 14th Amendment's Due Process Clause and the view that these public employees have a property interest in their employment." Id.
Likewise, Article X § 8(A) of the Louisiana Constitution provides that "[n]o person who has gained permanent status in the classified state or city civil service shall be subject to disciplinary action except for cause expressed in writing." "An appointing authority is required to afford an employee notice of the 'reasons'
*121 for disciplinary action." Ellins v. Dep't of Health , 505 So.2d 74, 76 (La. App. 4th Cir. 1987) (citing La. R.S. 33:2423 ).[7] In Montgomery v. Dep't of Streets , 593 So.2d 1352, 1354 (La. App. 4th Cir. 1992), this Court explained:
The purpose of the notice requirement established by the above article is to inform the employee of the charges against him in detail, and to limit and restrict the commission hearing to those charges. Ellins v. Department of Health , 505 So.2d 74, 76 (La. App. 4th Cir. 1987). Depending on the circumstances of the case, the employee must be informed of the time, place and nature of the alleged misconduct in sufficient detail to enable the employee to adequately prepare his defense. Department of Public Safety v. Rigby , 401 So.2d 1017, 1021 (La. App. 1st Cir.), writ denied 406 So.2d 626 (La. 1981). Municipal employees may not be disciplined for reasons other than those specified in the written notice. Polite v. Department of Welfare , 543 So.2d 529, 530 (La. App. 4th Cir. 1989).
"This written notice requirement pertains to the termination letter required after the employee has received a Loudermill pre-termination hearing." George v.Dep't of Fire , 93-2421, p. 10 (La. App. 4 Cir. 5/17/94), 637 So.2d 1097, 1104 (citing Brown v. Housing Authority of New Orleans , 590 So.2d 1258, 1260 (La. App. 1st Cir. 1991) ).
Rivet contends that the CSC erred by considering testimony regarding the events of April 17, 2015. She argues that these events are outside the scope of the July 9, 2015 discipline letter (the "2015 discipline letter"), which was issued to her after the pre-termination hearing. Rivet's argument stems from a typographical error in the 2015 discipline letter that went unaddressed by the litigants for two years. The 2015 discipline letter states that, on April 29, 2015, Rivet left her office to meet a repairman and held conversations with Sgt. Williams and Sgt. Gant concerning whether Rivet had permission to leave the office. These events, however, actually took place on April 17, 2015.
Rivet raised a similar argument to the CSC in a motion for summary disposition, wherein she contended that the 2015 discipline letter failed to provide her with sufficient written notice expressing the cause of her discipline for professionalism and truthfulness. The CSC denied Rivet's motion, finding that the 2015 discipline letter is "clear" that Rivet's "representations to Sergeant Franklin constitute the basis for the discipline administered by the NOPD." At the July 28, 2016 CSC hearing, Rivet made an oral motion to preclude "any statements or information regarding events that occurred on April 17, 2015" arguing that the order denying Rivet's motion for summary disposition requires that the hearing examiner "should restrict the case events of April 29th of 2015." The hearing examiner granted the oral motion.
On July 10, 2017, ten days before the CSC hearing resumed,[8] the NOPD issued to Rivet an amended discipline letter (the "2017 discipline letter"), which was virtually identical to the 2015 discipline letter, except that the date of April 29, 2015 was corrected to April 17, 2015. Rivet argues that neither the 2015 discipline letter nor the 2017 discipline letter informed her how *122 her conduct violated the Truthfulness Rule.
Both discipline letters contain the following description of Rivet's conduct:
Sergeant Williams advised you that you would not be allowed to relocate to your residence for personal business....
Sergeant Williams again informed you that you didn't have permission to leave the office to relocate to your residence....
...you met with Sergeant Randi Gant; of the ISB; and told her you left the office after being instructed not to do so. Sergeant Gant was later questioned and rendered a statement relative to this incident; her statement corroborated Sergeant Williams' statement....
In your statement to Sergeant Franklin ... You said you thought Sergeant Williams was having a bad day because he told you to go. You stressed that you would never leave without permission ...
Sergeant Franklin's investigation determined you left without permission and you were untruthful.
(Emphasis added).[9]
We find that Rivet was adequately put on notice that the reason for her termination was her misrepresentation to Sgt. Franklin that she had permission to leave work; Rivet was not deprived of due process. On the facts before us, we decline to equate a mere typographical error in the date of conduct with an attempt to bring a new violation against Rivet. No new reasons for discipline were brought before the CSC. Rivet also fails to explain how she was prevented from mounting an adequate defense because of the 2015 or 2017 discipline letter. This argument is without merit.
Accordingly, for these reasons, we affirm the decision of the CSC to deny Rivet's appeal.
AFFIRMED
BARTHOLOMEW-WOODS, J., DISSENTS WITH REASONS
BARTHOLOMEW-WOODS, J., DISSENTS WITH REASONS
For the reasons that follow, I respectfully dissent from the majority's decision. I would reverse the Civil Service Commission's ("CSC") ruling, and order the New Orleans Police Department ("NOPD") to reinstate Ms. Rivet subject to a suspension.
NOPD dismissed Ms. Rivet and the CSC upheld her dismissal based on NOPD Moral Conduct Rule 2, Paragraph 3, "Honesty and Truthfulness." The Rule provides that "[e]mployees are required to be truthful at all times, in their spoken, written, or electronic communications, whether under oath or not, in all matters and official investigations relating to the scope of their employment and operations of the Department." In the present matter, Ms. Rivet was found to have made a false statement during the investigation of a disciplinary matter that was lodged against her regarding whether she had received permission to leave work during working hours. To that end, I agree with the majority's finding that Ms. Rivet did, in fact, not tell the truth during her disciplinary action investigation; however, I disagree that termination of her employment was the proper remedy and further find that such punishment *123 was not commensurate with the infraction; thus, I find that the CSC's decision was arbitrary and capricious.
In reaching the aforementioned conclusion, I rely upon the NOPD's penalty schedule, as well as jurisprudence from this Court.
The NOPD Penalty Schedule ("the Schedule") provides the following for a violation of Moral Conduct Rule 2 Paragraph 3 Honesty and Truthfulness.[1]
TITLE CAT 1st Offense 2nd Offense 3rd Offense Truthfulness [On Duty/Off Duty] Dismissal Dismissal Dismissal
Interestingly, although the Schedule implies that an employee can be terminated for a first offense, it goes on to proscribe penalties for both a second and a third sustained violation of this rule. By contrast, the Schedule provides the following discipline for a violation of Professional Conduct Rule 3 Paragraph 7 Use of Drugs/Substance Abuse Testing:
TITLE CAT 1st Offense 2nd Offense 3rd Offense On Duty/Off Duty Dismissal [BLANK] [BLANK]
Similarly, the Schedule provides the following discipline for a violation of Performance of Duty Rule 4 Paragraph 2 Instructions from Authoritative Source:
TITLE CAT 1st Offense 2nd Offense 3rd Offense Failure to render a statement in Dismissal [BLANK] [BLANK] an administrative investigation
Further, the Schedule provides the following discipline for a violation of Official Information Rule 6 Paragraph 5 Informants:
TITLE CAT 1st Offense 2nd Offense 3rd Offense On Duty/Off Duty Dismissal [BLANK] [BLANK]
The aforesaid different disciplines seem to suggest that if the NOPD intended for the *124 violating employee to be terminated after a first offense for violating the "Honesty and Truthfulness" Rule, then the penalties for subsequent offenses would be left blank, as shown above for the other infractions. However, that is not the case.
As stated herein-above, I agree that the NOPD met its burden of proving that Ms. Rivet violated Moral Conduct Rule 2, Paragraph 3. However, with regard to the second prong of the review, whether NOPD's termination of Ms. Rivet is commensurate with her violation, in light of both her nineteen (19) year unblemished employment record, as well as applicable jurisprudence, I find that this is where the NOPD failed to meet its burden.
This Court has reasoned that
[t]ermination from permanent employment is the most extreme form of disciplinary action that can be taken against a city employee. Hills v. New Orleans City Council, [19]98-1101, p. 6 (La. App. 4 Cir. 12/09/98), 725 So.2d 55, 58. Cause that may justify some other lesser form of disciplinary action may not necessarily justify a dismissal. Dept. of Public Safety and Corrections, Office of State Police v. Mensman, [19]95-1950, p. 4 (La. 4/8/96), 671 So.2d 319, 321. In reviewing the disciplinary action taken by the Appointing Authority, "the Commission must consider whether the punishment was commensurate with the proven infractions under the circumstances. Id., [19]95-1950, p. 5, 671 So.2d at 322.
Honore' v. Dep't of Pub. Works , 2014-0986, p. 16 (La. App. 4 Cir. 10/29/15), 178 So.3d 1120, 1131, writ denied sub nom. Honore v. Dep't of Pub. Works , 2015-2161 (La. 1/25/16), 185 So.3d 749.
In Narcisse v. Dep't of Police , 2012-1267 (La .App. 4 Cir. 3/6/13), 110 So.3d 692, a case that is eerily similar to the present matter and based on the same NOPD rule, this Court affirmed NOPD's demotion of a police officer after finding that he failed to comply with his supervisors' verbal instructions, and NOPD's forty-five (45) day suspension of the officer after finding that he made several untruthful statements in violation of Moral Conduct Rule 2 Paragraph 3 Honesty and Truthfulness. [Emphasis added]. The CSC found that the officer was untruthful about his whereabouts during his work hours and permission to change his work schedule. The officer, who was assigned to the Public Integrity Bureau, reported to his supervisor that he had just spoken to an NOPD captain at Police Headquarters, when in fact, that particular NOPD captain was not present at Police Headquarters on the day in question. Further, the officer also claimed to have reported for duty and logged into a computer; a search of the computer's log-in record showed no indication that the officer had logged in.
In Parker v. Dep't of Police , 2007-1546 (La. App. 4 Cir. 1/24/08), 977 So.2d 180, this Court affirmed the CSC's reduction of an officer's penalty suspension. In the immediate aftermath of Hurricane Katrina, the officer completed her twelve (12) hour shift, and then, while off-duty, traveled from New Orleans to Baton Rouge to provide emergency funds and provisions to her husband and their six (6) children who had been living in the family's compact car for four (4) days after evacuating. The following day, the officer departed Baton Rouge at noon to return to New Orleans for her next ten (10) hour shift at 6:00 p.m.; as a result of the traffic, the officer arrived at 8:00p.m., two (2) hours late for her shift. NOPD found that the officer violated Performance of Duty Rule 4 and imposed a thirty (30) day suspension. The CSC found that NOPD met its burden of proof of the violation, but in consideration of mitigating factors, reduced the officer's suspension to ten (10) days.
*125 Here, finding that Ms. Rivet's violation more in-line with the Narcisse and Parker cases, Ms. Rivet's penalty should not be termination, but rather a suspension. Prior to this one infraction, Ms. Rivet enjoyed a nineteen (19) year career with the NOPD without any other disciplinary issue. While she did, in fact, violate the Moral Conduct Rule, the drastic measure of termination, certainly does not fit the infraction and a suspension is a more suitable punishment.
For the aforementioned reasons, I respectfully disagree with the majority's opinion and find that the CSC abused its discretion and acted arbitrarily and capriciously. Accordingly, I would reverse the CSC's upholding of NOPD's termination of Ms. Rivet and order the NOPD to reinstate Ms. Rivet subject to a suspension.

The parties ended the CSC hearing on July 28, 2016 in an attempt to reach amicable resolution of the claim. After the matter was not resolved, the hearing resumed on July 20, 2017 and August 8, 2017.

There was one detective on duty, but he was in the field at the time that Rivet left work.

Rivet's administrative statement is not a part of the record before us. The substance of the statement is discussed in Rivet's disciplinary hearing notification, both of her discipline letters, and Sgt. Franklin's testimony, all of which are a part of the record on appeal.

Rivet also cites to Norbert v. LSU Health Sci. Ctr. , 2007-0161 (La. App. 1 Cir. 11/2/07), 978 So.2d 947 to support her argument that her discipline should be reduced. For the same reasons, we also find Norbert distinguishable, as the case did not involve an NOPD employee.

We recognize that in certain reported cases, NOPD employees who violated the Truthfulness Rule prior to 2013 were suspended and/or demoted rather than terminated. See, e.g., Narcisse v. Dep't of Police , 2012-1267, p. 1 (La. App. 4 Cir. 3/6/13), 110 So.3d 692, 694 ; Pope , 2004-1888, p. 3, 903 So.2d at 3. The NOPD penalty matrix in the record was adopted on September 15, 2013, after the conduct at issue in those cases had occurred. We find no evidence in the record that, at the time of Rivet's conduct and discipline, the NOPD imposed any penalty other than termination for violation of the Truthfulness Rule.

Termination of employment is also consistent with Rule IX, Section 1.1 of the Rules of the Civil Service Commission for the City of New Orleans, which provides:
When an employee in the classified service is unable or unwilling to perform the duties of his/her position in a satisfactory manner, or has committed any act to the prejudice of the service, or has omitted to perform any act it was his/her duty to perform, or otherwise has become subject to corrective action, the appointing authority shall take action warranted by the circumstances to maintain the standards of effective service. The action may include one or more of the following:
(a) termination from the service...

La. R.S. 33:2423(B) requires that "[i]n every case of removal or reduction in pay of any employee in a competitive position in the classified service or of involuntary retirement or demotion of the employee, the appointing authority shall furnish the employee and the director a statement in writing of the reasons therefor."

See fn. 1, infra .

Neither discipline letter contains the date on which Sgt. Franklin took Rivet's administrative statement.

The information contained in this chart was taken directly from the New Orleans Police Department's Procedure Manual's Disciplinary Hearing and Penalty Schedule in effect at the time of Ms. Rivet's alleged violations. This Court takes judicial notice of the NOPD Penalty Schedule, which is accessible in the public domain. Mendoza v. Mendoza , 2017-0070, p. 6 (La. App. 4 Cir. 6/6/18), 249 So.3d 67, 71, writ denied , 2018-1138 (La. 8/31/18), 251 So.3d 1083 ; Felix v. Safeway Ins. Co. , 2015-0701, p. 7 (La. App. 4 Cir. 12/16/15), 183 So.3d 627, 632 & n.10.