GULOTTA, Judge.
Plaintiff appeals from a decision of the New Orleans Civil Service Commission sustaining her suspension from the Department of Health. We reverse and remand.
Amy Ellins had been employed as a paramedic with the Health Department for almost seven years. On October 8, 1985, Ellins was informed by the appointing authority, that she had been suspended for five days, commencing October 5 and ending on October 11, 1985. The suspension letter complained of plaintiff's non-adherence to the professional standards established by the Orleans Parish Medical Society, as follows:
*75 “Failure to follow established procedures results in diminishing the quality of service provided. You failed to adhere to these practices when you, after performing advanced life support procedures, relinquished a patient to a basic, emergency medical technician assistant team and drove the vehicle while allowing a lesser trained employee to attend to a patient. By doing so, you entrusted the care of your patient to someone who is not trained to handle it.”
Ellins’s supension was upheld by the Civil Service Commission following a hearing on February 7, 1986.
Appealing, Ellins raises a two-fold argument: 1) that the disciplinary letter failed to inform her fully of the reasons for her suspension, and 2) that the Civil Service Commission upheld her suspension based on inadmissible evidence. According to El-lins, although the letter informing her of her suspension makes reference to only one incident of failing to follow established procedures (allowing a lesser trained employee to attend to a patient), the Civil Service Commission heard and considered other incidents of misconduct not set forth in the disciplinary letter. Ellins argues that by failing to inform her of the specific violations, the disciplinary letter did not afford her adequate and proper notice. According to Ellins evidence of violations not specified in the letter are not admissible.
At the Civil Service Commission hearing, evidence was admitted relating to numerous incidents of misconduct not mentioned in that suspension letter. Dr. Ken Carter, the Medical Director of EMS for the Health Department, testified that he had counseled plaintiff about her methods of handling patients during ambulance runs. According to the witness, in cases which merited paramedic care, Ellins turned the patient over to a lesser trained person and drove the ambulance. Carter further stated that this had occurred on approximately sixty (60) occasions, specifically making reference to 15 instances. Carter also related that this pattern continued after his counseling session with Ellins and as a result she was suspended.
Marlene Parr, Director of the Health Department, testified that Ellins was not dismissed for one occurrence but for several, involving a continual disregard of medical protocol.
Plaintiff testified that most of the cases referred to in Dr. Carter’s testimony were basic care cases which did not require the need for paramedic care. She further stated that in one case where paramedic care was needed, she did not drive the ambulance but instead stayed with the patient. According to Ellins, it was her impression at the counseling session that the doctor was dissatisfied with her documentation of reports and not so much with the way she handled patients. Additionally, plaintiff stated that it was not common practice for a paramedic to ride in the back of the ambulance and that she had complied with Carter’s requested changes.
In upholding the suspension, the Civil Service Commission clearly relied on evidence of prior misconduct. The pertinent part of the Commission’s decision states:
“The appellant failed to adhere to established practices after performing advanced life support procedures. Specifically, she relinquished a patient to an Emergency Medical Technician, Assistant team while she drove the vehicle, thus allowing a lesser trained employee to care for the patient. The City contends that by doing so the appellant entrusted the care of her patient to someone who was not trained to handle the situation. The appellant, however, was successful in defending her action in this one instance.
“The Medical Director of Emergency Medical Services, Dr. W. Ken Carter, testified that on many occasions she failed to provide the type of medical service that was required by the Department and ... stated that he had some sixty instances that took place after the appellant had been counseled several times. He further testified regarding some fifteen instances in which the appellant failed to follow medical protocols as set out by the Department.”
*76 . the letter cites clearly enough the appellant’s actions which led to the suspension.”
An appointing authority is required to afford an employee notice of the “reasons” for disciplinary action. LSA-R.S. 33:2423. The purpose of the notice letter is to apprise the employee of the charges in detail, and at the same time, to limit and restrict the hearing to those specific charges. Paulin v. Dept, of Safety & Permits, 308 So.2d 817 (La.App. 4th Cir.1975). See also Ascani v. Department of Parks and Recreation, etc., 402 So.2d 808 (La.App. 4th Cir.1981), writ denied 407 So.2d 733 (La.1981).
In the instant case, the disciplinary letter made reference to only one alleged act of misconduct with specificity, and the Commission concedes that plaintiff successfully refuted this act. Plaintiff was suspended for a continuing pattern of misconduct which was not specifically stated in the notice. Consequently, in light of statutory law and the jurisprudence, we are compelled to set aside the suspension imposed by the Civil Service Commission.
We were confronted with a similar problem in Caston v. Dept, of Streets, (unpublished CA-2267) (See “Appendix A” attached). In Caston, plaintiff argued that the City violated her right to due process by admitting and considering evidence of grounds other than the one specified in her notice of discharge, and that the City failed to prove that her discharge was based on the stated grounds. We agreed with Ca-ston’s contentions, reversed the Commission’s decision, and remanded the case to the Department of Streets to issue a new notice of dismissal to Ms. Caston.
Likewise in the instant case, consistent with our holding in Caston, we reverse and set aside the suspension and remand this matter for the purpose of allowing the Department of Health to issue Amy Ellins a new notice for disciplinary action setting forth with specificity the “reasons” therefor.
REVERSED AND REMANDED.
APPENDIX A
Emma Caston v. Department of Streets and The City of New Orleans.
No. CA-2267.
Court of Appeal of Louisiana, Fourth Circuit.
Feb. 12, 1985.
Before LOBRANO, WARD and ARMSTRONG, JJ.
WARD, Judge.
Emma Caston appeals a decision of the New Orleans City Civil Service Commission upholding her firing by the City Department of Streets on grounds of unauthorized absence from work. Ms. Caston raises as issues the reason for her discharge and the scope and sufficiency of the evidence presented at the Civil Service hearing. She argues that the City violated her right to due process of law by admitting and considering evidence of grounds other than the one stated in her notice of discharge and further, that the City failed to prove that her discharge was justified on the stated grounds.
We agree with Ms. Caston and find that the ruling of the Civil Service Commission was substantially based upon evidence of grounds not given in the Department of Streets’ notice of dismissal and that the City failed to prove that Ms. Caston’s firing was justified under the grounds stated in her notice. We reverse the Commission’s decision and order the City to issue a new notification of discharge to Ms. Caston, and if she appeals, we order a new hearing.
Ms. Caston worked as a laborer for the Department of Streets, beginning in September 1981. On June 15, 1983, her physician told her that she would have to undergo immediate surgery. He gave her a letter stating that she was to be admitted to the hospital on June 22 and that convalescence would require approximately eight to ten weeks out from work. On June 17, Ms. Caston took the letter to the Depart *77 ment’s payroll office where she submitted a form request for authorized leave without pay from June 22 to July 6. She worked on June 20 and 21, and on one of those days, picked up her doctor’s letter from the Department office. On the letter, her immediate supervisor had jotted a note to his superior recommending authorization of her leave. As planned, Ms. Caston was admitted to the hospital on June 22. Meanwhile, the Department of Streets Chief Engineer denied her request for leave. She was fired from her job on June 28 because, according to the Department’s dismissal letter, she had proven to be unable or unwilling to perform her duties by being absent without authorized leave for five consecutive days. The letter gave no other reasons for the dismissal.
At the Civil Service hearing, Ms. Caston testified that the Department misled her into believing that her leave was authorized, an allegation her supervisors denied. Ms. Caston stated that she relied upon the payroll clerk’s assertion that her request would be “taken care of”. Her supervisor’s recommendation on the physician’s letter further led her to believe authorized leave would be granted. Ms. Caston had requested leave without pay on another occasion, and since it had been granted that time, she seemed to believe there was little possibility that the Chief Engineer might deny her request. Ms. Caston’s testimony indicates her view of the procedure was that authorized leave without pay was routinely granted and she could assume it was granted unless she was notified to the contrary. The witnesses from the Department of Streets insisted that this view was erroneous and that they had done nothing to mislead Ms. Caston. Although her immediate supervisor and his superior had recommended approval of her leave, the Department witnesses testified that Ms. Caston was informed that the final decision was to be made by the Chief Engineer and it was her responsibility to check on the status of her request. Furthermore, they stated that her previous request for leave should have given her experience with the procedure, negating her claim of ignorance of it. At the hearing, the Department introduced into evidence Ms. Caston’s record of frequent absences from work going back to the beginning of her employment. Ms. Ca-ston’s attorney repeatedly objected to the introduction of that record and related testimony. He asserted that it was irrelevant because Ms. Caston was not discharged because of prior absences, and further, that the Department had not produced the record of absences in response to a subpoena requesting all documents which the Department planned to introduce at the hearing.
The Hearing Officer sustained Ms. Ca-ston’s attorney’s first objection to the relevance of her 1981 absences from work, recognizing that the present charge was only five consecutive days of unauthorized absence in June 1983. He quickly changed his mind, however, and admitted the entire record, permitting a Department employee to read from it. The Hearing Officer explained his evidentiary ruling by saying that, “it looks to me like this [the dismissal letter] might have been inarticulately drafted, and they could have just put in one more line and said, ‘And because of your past poor record.’ ” He later declined to “hold” the Department to the charge in the letter, stating that he didn’t think the Commission “is going to stand on ceremony for that” (the terms of the letter).
As for the failure to include the record with other documents subpoenaed by Ms. Caston’s attorney, the Department representative stated that “at the time of the subpoena duces tecum and at the time I brought some records up to Civil Service, it was going to be based strictly on five days unauthorized absences from work ...” Nevertheless, the Hearing Officer encouraged introduction of Ms. Caston’s entire record, which indicated other absences, responding, “Well don’t you think [the entire record] plays a pertinent part with that? It goes hand in glove.”
The Civil Service Commission upheld Ms. Caston’s dismissal on the basis of the record from the hearing. The substantive portion of the Commission’s ruling states:
*78 Basically this ' case revolves around Rule IX, Section 1.1 of the Civil ^Service Commission which gives the appointing authority the right to dismiss an employee if he/she is “unable or unwilling to work”. Through substantial testimony, the City proved that, in less than two (2) years with the City, the appellant had missed fifty (50) days for work related injuries and/or illness (stomach, throat, knee, and hysterectomy). At the time of the hearing, the appellant was still uncertain as to whether or not she could return to her prior position as a Laborer with the Department of Streets.
The situation of the appellant is an unfortunate one, but Rule IX was instituted to insure that the City can operate at an adequate level.
On appeal, Ms. Caston renews her contentions regarding the admission of evidence about her record of prior absences and its consideration by the Commission. Since the notice of dismissal sent to Ms. Caston gave as grounds for discharge only the unauthorized absence of five days from work, she was not prepared to defend her prior record at the hearing. She contends that it was a denial of due process when it was admitted into evidence and argues that the error was particularly egregious because the Department did not provide her with a copy of the absence record in response to her subpoena.
We find the hearing officer committed a reversible error in permitting the introduction of evidence concerning Ms. Caston’s record of absences which was not the basis of her dismissal. While the rules of evidence may be somewhat relaxed at a Civil Service hearing, the lapse of formalities must not permit a violation of the employee’s rights to a fair hearing with notice of the charges against her. An appointing authority is required to give an employee notice of the grounds for its disciplinary action. La.R.S. 33:2423. The purpose of the notice letter is to apprise the employee of the charges in detail against which she must defend, and at the same time, to limit and restrict the hearing to those specific charges. Paulin v. Department of Safety and Permits, 308 So.2d 817 (La.App.4th Cir.1975). The notice is meaningless if the hearing officer can effectively “rewrite” it during the course of the hearing.
The discharge of an employee cannot be upheld on grounds other than those stated in the notice letter. Morrell v. Department of Welfare, 266 So.2d 559 (La.App.4th Cir.1972). Since the findings of the Commission must be based on relevant, admissible evidence and the decision in this case rests heavily on Ms. Caston’s record of absences prior to June 1983, which we find irrelevant and inadmissible, we reverse the decision. Dundy v. Louisiana State University, 394 So.2d 650 (La.App.lst Cir.1980).
We have no doubt that it is within the discretionary authority of the Department of Streets to refuse leave without pay and to terminate any employee who is absent from work due to illness and who has exhausted her sick leave. Bradford v. Department of Hospitals, 255 La. 888, 233 So.2d 553 (1970). Nevertheless, we will not affirm a ruling upholding such a termination where the employee was not notified of all of the grounds for her firing and where those grounds of which she was notified are not firmly supported by the evidence.
We have examined the record to determine whether, disregarding all evidence of Ms. Caston’s prior absences, the evidence fairly supports a finding that the Department carried its burden of proving its disciplinary action was justified. We have reviewed the conflicting evidence surrounding Ms. Caston’s leave application and her communications with Department employees in light of her contention that she went into the hospital reasonably believing she would be granted authorized leave without pay. We are not convinced that Ms. Ca-ston was misled concerning the approval of her application for leave. She obviously was indifferent to the Department’s procedures when she failed to check back before her absence to ascertain the status of her application. While her five days unauthorized absence alone may not justify disciplinary termination, it may be sufficient *79 grounds when considered in the totality of the circumstances. Since we hold Ms. Ca-ston’s entire work record was inadmissible at the hearing, the Civil Service Commission has not been able to consider the totality of the circumstances in her case.
Hence, we remand this case for the Department of Streets to issue a new notice of dismissal to Emma Caston, fully setting forth the grounds for her discharge, and if Ms. Caston again appeals, we order the Civil Service Commission to hold another evidentiary hearing, restricting the evidence to those grounds stated in the Department’s new notice of dismissal.
REVERSED AMD REMANDED.