**BRANDON PLAINS**      *      **NO. 2021-CA-0086**

**VERSUS**      *

     **COURT OF APPEAL**

**SEWERAGE & WATER**      *
**BOARD**      **FOURTH CIRCUIT**

     *

     **STATE OF LOUISIANA**

* * * * * * *

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 9141 C\W 9166, "O"
Hearing Officer  No Hearing Officer, Hearing Officer
* * * * * *
**Judge Regina Bartholomew-Woods**
* * * * * *
(Court composed of Judge Joy Cossich Lobrano, Judge Regina Bartholomew-Woods, Judge Paula A. Brown)

**LOBRANO, J. CONCURS IN THE RESULT**

Sharon Kaye Hunter
2629 Dante Street
New Orleans, LA 70118

       COUNSEL FOR PLAINTIFF/APPELLEE

Ashley Ian Smith
ATTORNEY IV
Darryl Harrison
DEPUTY SPECIAL COUNSEL
Erica J. Bindom Lathan
SEWERAGE AND WATER BOARD OF NEW ORLEANS
625 St. Joseph Street, Room 201
New Orleans, LA 70165

       COUNSEL FOR DEFENDANT/APPELLANT

           **REVERSED**
           **DECEMBER 15, 2021**

*RBW*

*PAB*

This appeal arises from the ruling of the Civil Service Commission that vacated the suspension and termination of a Sewerage and Water Board of New Orleans employee. This Court is tasked with determining whether the employee was given due process of the charges he faced prior to his termination. Determining he did, in fact, receive due process, for the reasons that follow we reverse the decision of the Civil Service Commission.

## FACTUAL & PROCEDURAL BACKGROUND

Defendant-Appellant, Sewerage and Water Board of New Orleans ("the Board"), employed Plaintiff-Appellee, Brandon Plains ("Mr. Plains") as a Water Purification Operator I in the Purification Department of the Board's Operations Division. Mr. Plains was a classified permanent employee.

1

In May 2019, Nicole Jackson ("Ms. Jackson"), an employee with the Board, met with her supervisors alleging Mr. Plains engaged in harassing behavior toward her. Ms. Jackson reported that she had recorded the harassment, but she did not present this recording at that time. She requested, and was granted, a transfer to another location; however, the Board later transferred Ms. Jackson back to the previous location to address staffing shortages. The Board reasoned that because there were no further reports of continuing issues between Mr. Plains and Ms. Jackson the transfer back was acceptable.

On January 18, 2020, Ms. Jackson filed a formal complaint alleging that Mr. Plains attempted to back into her with a Board vehicle (hereinafter "the January Incident"). As part of this complaint, Ms. Jackson restated her previous harassment allegations made in May 2019. To substantiate the May 2019 complaint, Ms. Jackson presented two (2) video recordings, taken with her cell phone on December 9, 2018, of Mr. Plains yelling obscenities, threatening Ms. Jackson, using sexually aggressive language, and refusing to leave the area when asked to by Ms. Jackson (hereinafter "the December Incident").[1]

On January 24, 2020, the Board initiated an investigation that concluded on January 31, 2020.

---

[1] The recording allegedly contains the following statement by Mr. Plains:

> Open the d*mn door; I'm getting mad; I'm not playing with you, open that door before I hurt you. Open that f***ing door, bruh. Yea, I run the f****ing show. What the f*** is this all about? Why the f*** would you lock me out? My d**k is so fat. I'm going to call you f***ing bae whether you like it or not. F***that.

On January 27, 2020, as part of the investigation, the Board interviewed Mr. Plains. During his interview, Mr. Plains acknowledged that he was aware the Board was investigating the December Incident. Mr. Plains was presented with the video recordings and allowed to present his side of the story. Mr. Plains was informed that Ms. Jackson made the complaint, and he confirmed he knew Ms. Jackson. Mr. Plains listened to the recordings and admitted his behavior was inappropriate. When questioned about the January Incident, he denied trying to hit Ms. Jackson with a company vehicle.

The investigation concluded that the harassment claim for the December Incident was substantiated. The January Incident was deemed inconclusive.

On January 31, 2020, the Board notified Mr. Plains, by certified letter, of his indefinite suspension without pay. The letter stated the suspension was because Mr. Plains "*continuously* engaged in harassing conduct towards a co-worker" (emphasis added).

On February 28, 2020, Mr. Plains appealed his suspension without pay to the Civil Service Commission for the City of New Orleans ("the Commission").

On May 18, 2020, May 19, 2020, and May 20, 2020, the Board notified Mr. Plains, via phone and email, that a pre-termination hearing was scheduled. Another email notification was sent on May 21, 2020. The notifications stated:

> Pre-Termination Hearing Scheduled based on the following factors:
> SWBNO Policy Violations - Harassing Conduct Policy & Professionalism Policy Incident **occurred on December 9, 2018**; details of the incident were brought to Management's & HR's attention mid-January 2020.

3

(Emphasis added).

On May 22, 2020, the Board held a pre-termination hearing, which focused solely on the December Incident. At the conclusion of this hearing, the Board terminated Mr. Plains.

On May 29, 2020, the Board mailed Mr. Plains a letter confirming the termination and explaining the termination was for violating the Board's Harassing Conduct Policy & Professional Conduct Policy. The letter stated the complaint alleged continuous harassment and the investigation found Mr. Plains' "behaviors" violated the policies.

On July 3, 2020, Mr. Plains appealed his termination to the Commission by filing a Motion for Summary Disposition on the grounds that he was not given adequate notice of the conduct necessitating his termination.

The Commission granted the Motion for Summary Disposition and ordered the Board to reinstate Mr. Plains with back pay and emoluments of employment.

The Board filed the instant appeal.

## DISCUSSION

*Assignment of Error*

The Board asserts the Commission erred in ruling Mr. Plains's due process rights were violated due to a failure to provide sufficient notice pursuant to *Cleveland Bd. of Educ. v. Loudermill*[2] and reinstating Mr. Plains's employment.

*Standard of Review*

---

[2] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) [hereinafter *Loudermill*].

4

Once the appointing authority imposes discipline on an employee, the employee has a right to seek an appeal with the State Civil Service Commission. La. Const. art. X §12. The Commission has the authority to hear and decide all disciplinary cases. *Id*. On appeal, the Commission "has a duty to decide independently from the facts presented whether the appointing authority has a good or lawful cause for taking disciplinary action." *Whitaker v. New Orleans Police Dep't*, 2003-0512, p. 2 (La. App. 4 Cir. 9/17/03), 863 So. 2d 572, 574.

This Court reviews the Civil Service Commission's findings of fact under a clearly wrong or manifest error standard. La. Const. art. X §12; *Doyle v. Sewerage & Water Bd.*, 2017-0928, p. 3 (La. App. 4 Cir. 5/16/18), 247 So. 3d 806, 809. The decision of the Civil Service Commission should not be modified unless it is arbitrary, capricious, or characterized by an abuse of discretion. *Id*. (citing *Thornabar v. Dep't of Police*, 08-0464, p. 2-3 (La. App. 4 Cir. 10/15/08), 997 So.2d 75, 77). This Court also has the authority to review procedural decisions and questions of law. *Id*. (quoting *Perkins v. Sewerage & Water Bd.*, 95-1031 (La. App. 4 Cir. 2/29/96), 669 So. 2d 726, 728). Questions of law are reviewed *de novo*. *Liang v. Dep't of Police,* 2013-1364, p. 8 (La. App. 4 Cir. 8/20/14), 147 So. 3d 1221, 1225.

*Analysis*

Civil service employment is a property right that cannot be taken away without due process. *Matusoff v. Dep't of Fire*, 2019-0932, p. 6 (La. App. 4 Cir. 5/20/20), *writ denied*, 2020-00955 (La. 10/20/20), 303 So. 3d 313. Pursuant to the

5

Louisiana Constitution, "No person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing." La. Const. Ann. art. X, §8. The notice should identify the charges or fully describe the conduct complained of, set forth the relevant dates and places of the charged behavior occurred, and identify any witnesses against the employee so that the employee may fully answer and prepare a defense. *Williams v. Dep't of Prop. Mgmt.*, 2002-1407, p. 3 (La. App. 4 Cir. 4/16/03), 846 So. 2d 102, 104. Regarding proper notice, Rule IX, § 1.2 of the Rules of the Civil Service Commission for the City of New Orleans states:

> In every case of termination of employment of a regular employee, the appointing authority shall conduct a pre-termination hearing as required by law and shall notify the employee of the disciplinary action being recommended prior to taking the action.

Rule IX, § 1.3 of the civil service rules requires the notice to be in writing as follows:

> In every case of termination, suspension, reduction in pay, letter of reprimand, or fine of any employee in the classified service or of involuntary retirement or demotion of the employee, within five (5) working days of the effective date of the action, the appointing authority shall furnish the employee and the Personnel Director a statement in writing of the reasons therefore.

The notice mandate was later judicially expanded to include oral notice. *Loudermill*, 470 U.S. at 546.[3] Proof of sufficient oral notice must consist of more

---

[3] Despite the Civil Service Commission rule retaining the "written notice" language, Louisiana courts consider oral, as well as written notification in considering the sufficiency of notice. *Matusoff*, 2019-0932, p. 6, at *3; *Williams*, 2002-1407, p. 2, 846 So. 2d at 104; *Henderson v. Sewerage & Water Bd.*, 99-1508, p. 2 (La. App. 4 Cir. 12/22/99), 752 So. 2d 252, 254; *Riggins v. Dep't of Sanitation*, 617 So. 2d 112, 113 (La. App. 4th Cir. 1993); *Webb v. Dep't of Safety & Permits*, 543 So. 2d 582, 583 (La. App. 4th Cir. 1989).

6

than an affidavit. *Henderson*, 99-1508, p. 4, 752 So. 2d at 255. "The purpose of the notice requirement…is to inform the employee of the charges against him in detail, *and to limit and restrict the commission hearing to those charges*." *Montgomery v. Dep't of Streets*, 593 So. 2d 1352, 1354 (La. App. 4th Cir. 1992) (citing *Ellins v. Department of Health,* 505 So. 2d 74, 76 (La. App. 4th Cir.1987) (emphasis added)). "Municipal employees may not be disciplined for reasons other than those specified in the written notice." *Id*. (citing *Polite v. Department of Welfare,* 543 So. 2d 529, 530 (La. App. 4th Cir.1989)).

In the instant case, the Board asserts the January 27, 2020 investigatory interview provided oral notice of: 1) the conduct complained of, 2) the relevant dates, times, and locations, 3) the potential witnesses, and 4) all evidence against Mr. Plains. He was questioned about both the December Incident, as well as the January Incident, was informed that Ms. Jackson was the complainant, and presented with the evidence against him; therefore, the Board believes Mr. Plains was given sufficient oral notice.

Mr. Plains counters that the letter he received served as the only official notice he received, and because it only identified the December Incident as the reason for possible disciplinary action, he was not given sufficient notice that he also faced discipline for the January Incident. Mr. Plains further asserts oral notice is not an acceptable form of notice.

Contrary to Mr. Plains' insistence that oral notice is not an acceptable form of notice, this Court has repeatedly stated oral notice is acceptable, if all notice

requirements are met. *See* cases cited *supra* note 2. In *Henderson*, this Court considered the sufficiency of oral notice when the accused's supervisors informed him before the pre-termination hearing that he faced termination for striking his supervisor, and the accused expressed concern that he would be terminated. 99-1508, p. 4, 752 So. 2d at 254–55. This Court found the oral notice was insufficient because the accused was not informed of the evidence against him. *Id*. at 255. In contrast, the Board in the instant case did inform Mr. Plains of the evidence against him. Mr. Plains was even given the opportunity to review the evidence and offer his defense during the investigation.

Regarding notice and multiple incidents, this Court has ruled, in the past, that if multiple instances inform the basis of the disciplinary action, each instance requires notice. *Williams*, 2002-1407, p. 5, 846 So. 2d at 105. In *Williams*, a city employee was accused of one incident of payroll fraud; however, the termination letter cited two additional instances of payroll fraud. *Id*. 2002-1407, p. 1, 846 So. 2d at 103. This Court reasoned, "[s]ince the Department of Property Management used these other two incidents of payroll fraud to reach its decision to terminate plaintiff's employment, the plaintiff was entitled to notice of these additional charges and an opportunity to present a defense in regard to these additional charges." *Id*. 2002-1407, p. 5, 846 So. 2d at 105.

At the January 27, 2020 interview, Mr. Plains was questioned about allegations levied against him for the December Incident and January Incident; including the date and location, the evidence against him, and the witnesses who

may testify. This interview served to broadly inform Mr. Plains what incidents were the focus of the pre-termination hearing. This focus was later narrowed down when he received notice of the pre-termination hearing explaining that he was facing disciplinary action for the December Incident. The pre-termination hearing notice letters established that the focus of the hearing would be the December Incident. There is no allegation that any other incidents were raised at the pre-termination hearing. This Court finds Mr. Plains received sufficient oral notice of all allegations.

Even though Mr. Plains received sufficient oral notice of all assertions, this Court shall address the issue of whether the January Incident was a factor in his termination. Mr. Plains' termination letter stated in pertinent part: "a complaint, alleging you have *continuously engaged* in harassing conduct towards a co-worker" and "it was found that your *behaviors* were in violation…." The Commission specifically identified the "continuously engaged" language as proof of insufficient notice which warranted reinstatement of Mr. Plains.

A plain reading of the letter suggests the statements "continuously engaged" and "behaviors" refer to more than one act influencing the termination. This Court agrees because the December Incident, for which Mr. Plains faced discipline at the pre-termination hearing, involved multiple, disturbing behaviors and continued harassment. Three (3) claims arose from the December Incident and were investigated: 1) sexual harassment, 2) verbal abuse, and 3) threats of violence. The described incident sets forth sustained and *continuous* behavior, even after being

asked to stop by Ms. Jackson.[4] Based on this report, it is clear the December Incident was not one discreet event, but rather, a series of escalating behaviors which continued after multiple pleas by Ms. Jackson to be left alone.

Considering that the December Incident involved three (3) separate claims, and identified eleven (11) distinct acts, when the Board used the terms "continuously engaged" and "behaviors" it relied solely on the December Incident when it terminated Mr. Plains. Further, in accordance with jurisprudential

---

[4] The investigation report listed eleven (11) acts committed by Mr. Plains during the December Incident:

> 1.    Mr. Plains was at the workstation and was not scheduled for work at that time, which is a violation of SWBNO and department policy.
> 2.    Mr. Plains was attempting to get into the office where Ms. Jackson was, but Ms. Jackson refused to open the door for him. … Mr. Plains began to beat on the office door and windows to compel Ms. Jackson to open the door.
> 3.    Mr. Plains used his title as operator to coerce her into opening the office door and letting him in.
> 4.    Once inside, Ms. Jackson continued to ask Mr. Plains why he was there, and he continued to not tell her.
> 5.    Ms. Jackson, throughout this time, told Mr. Plains to leave and he refused.
> 6.    Mr. Plains began to call Ms. Jackson "bae", which is a term of endearment, even though Ms. Jackson stated that she was married and told Mr. Plains to stop calling her that; Mr. Plains refused.
> 7.    Mr. Plains began to ask about Ms. Jackson's personal life, and Ms. Jackson was reluctant to speak about her personal family life. Mr. Plains wanted Ms. Jackson to cook food for him and to bring him a plate from home for him at work.
> 8.    Mr. Plains talked about wanting a girlfriend just like Ms. Jackson and told her that he wanted to know what was going on with her, wanted to check up on her. Mr. Plains went so far as to say that he did not want to work any shift that Ms. Jackson was not working.
> 9.    Mr. Plains proposed repeatedly that he and Ms. Jackson hang-out outside the work environment….
> 10.   Mr. Plains admitted that he may have been drunk while being in the workstation.
> 11.   Mr. Plains lied to Ms. Jackson when he informed her that his cell phone was dead [in an attempt to convince her to let him enter the office].

authorities, the incidents are not so vague as to suggest to this Court that the January Incident may also have been considered by the Board. Mr. Plains performed multiple, continuous, concerning behaviors during the December Incident. Therefore, we find that the Commission's decision to reverse the Board was arbitrary when it concluded that the terms "continuously engaged" and "behaviors" indicated the January Incident.

## CONCLUSION

We conclude that Mr. Plains' due process rights were not violated as he was provided oral notice of all December incidents for which he faced disciplinary action and was given an opportunity to present his defense. Given the nature of the claims against him, there is no evidence the January Incident was considered at the pre-termination hearing, and the Commission's finding to the contrary was arbitrary such that reversal of its ruling is warranted.

Considering the foregoing, the ruling of the Civil Service Commission reinstating Mr. Plains is reversed.

**REVERSED**