JONATHAN MYKULAK     *     NO. 2022-CA-0578

VERSUS     *

NEW ORLEANS POLICE     *     COURT OF APPEAL

DEPARTMENT     FOURTH CIRCUIT

    *

    STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CITY CIVIL SERVICE COMMISSION, ORLEANS PARISH
NO. 9245
* * * * * *
**Judge Tiffany Gautier Chase**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Tiffany Gautier Chase, Judge
Nakisha Ervin-Knott)


Eric J. Hessler
ATTORNEY AT LAW
320 N. Carrollton Avenue, Suite 202
New Orleans, LA 70119

      COUNSEL FOR PLAINTIFF/APPELLANT

William R. H. Goforth
ASSISTANT CITY ATTORNEY
Corwin M. St. Raymond
ASSISTANT CITY ATTORNEY
Elizabeth Robins
DEPUTY CITY ATTORNEY
Donesia D. Turner
CITY ATTORNEY
City Hall - Room 5E03
New Orleans, LA 70112

      COUNSEL FOR DEFENDANT/APPELLEE


                   **AFFIRMED**
               **MARCH 16, 2023**

This case involves an appeal from the Civil Service Commission of the City of New Orleans (hereinafter "the Commission"). The Appointing Authority, the New Orleans Police Department (hereinafter "NOPD"), imposed an eighty (80) day suspension on Officer Jonathan Mykulak (hereinafter "Officer Mykulak") for violating NOPD Rule 2, Moral Conduct, Paragraph 6, Unauthorized Force. The Commission issued a decision upholding the eighty (80) day suspension and from the decision, Officer Mykulak appeals. After consideration of the record before this Court and the applicable law, we affirm the decision of the Commission.

## FACTS AND PROCEDURAL HISTORY

The discipline imposed originates from a traffic stop and subsequent arrest that occurred on February 21, 2020. Officer Mykulak and his partner, Officer Sasha Winchester (hereinafter "Officer Winchester"), conducted a traffic stop of a vehicle that was driving erratically. The arrest was recorded on Officer Winchester's body worn camera (hereinafter "BWC").[1] Following the traffic stop, the male suspect exited the vehicle and was placed next to the patrol unit. The officers questioned the suspect and noticed a bag of narcotics inside the suspect's

---

[1] Officer Mykulak's camera dislodged from his uniform during the incident and only the audio portion of the incident was recorded.

vehicle. When informed that he was being placed under arrest, the suspect ran towards the driver's side of his vehicle and reached under the seat. Officer Mykulak struggled with the suspect inside the vehicle, struck the suspect in the head and deployed his taser, hitting the suspect several times. During the struggle, Officer Winchester entered the vehicle on the passenger side. Both officers testified that they feared that the suspect was reaching for a gun. Officer Mykulak eventually handcuffed the suspect and placed him face down on the ground. While the suspect was on the ground, Officer Mykulak's knee made contact with the suspect's back two separate times. During the second contact, Officer Mykulak's knee remained on the suspect's back for approximately 10-14 seconds. Officer Mykulak testified that he was out of breath, lost his balance and slipped, causing him to fall on the suspect's back. Immediately following the incident, Officer Mykulak reported that he discharged his taser and admitted to striking the suspect in the head several times. [2]

### NOPD INVESTIGATION

On April 14, 2020, Lieutenant Kevin Burns (hereinafter "Lt. Burns") with the NOPD's Public Integrity Bureau (hereinafter "PIB"), received an e-mail from an auditor within the NOPD's Professional Standards and Accountability Bureau.[3] The auditor advised Lt. Burns as follows:

> "[I]t appears that the officer, Mykulak, used excessive force after the CEW [taser] deployment and drive stun to get subject into compliance. At the 4:49 minute mark of Winchester BWC, you see

---

[2] Officer Mykulak reported the incident to his supervisor, Sgt. Gaines. Sgt. Gaines investigated the incident by interviewing the suspect and reviewing BWCs of Officer Winchester and several other officers at the scene. On March 26, 2020, Sgt. Gaines issued a report concluding that while Officer Mykulak used profanity, which was unprofessional, he did not observe any violations of federal, state or municipal laws.

[3] In accordance with the Consent Decree between the City of New Orleans and the United States Department of Justice, the Innovation Manager of Professional Standards and Accountability Bureau is tasked with the following: conducting audits; reviewing the day to day performance of NOPD officers; and ensuring that the NOPD adheres to the guidelines of the Consent Decree. Police Performance Auditors randomly perform audits regarding stop and search arrests by the NOPD.

him put his knee onto the subject [sic] back with some force. Not sure if this is considered for PSS review but thought it worth a look after our conversation."

On April 20, 2020, Lt. Burns initiated a formal investigation regarding the information provided by the auditor. As part of the investigation, Lt. Burns viewed Officer Winchester's BWC and interviewed Officers Mykulak and Winchester. Lt. Burns issued a report, wherein he concluded that Officer Mykulak's actions were inconsistent with the NOPD training he received and that he used force against a person who was handcuffed, compliant and under control. Officer Mykulak was charged with violating NOPD Rule 2, Moral Conduct, Paragraph 6, Unauthorized Force.[4]

On January 20, 2021, the NOPD sent Officer Mykulak a suspension letter notifying him of the finding that he violated NOPD Rule 2, Moral Conduct, Paragraph 6, Unauthorized Force. The letter stated that the recommended penalty was an eighty (80) day suspension. The letter further explained:

> You violated this Rule when you delivered an intentional downward knee strike to an individual that was compliant at the time. The subject was cuffed to the rear in a prone position and a Code 4 had been given. After the intentional knee strike, you remained across the back of the subject's neck. You then pulled the subject haphazardly halfway to his feet and allowed him to fall to the ground without the benefit of bracing for impact…Moreover, your conduct is contrary to the standards as prescribed by Rule IX, Section 1, paragraph 1.1, of the Rules of [sic] Civil Service Commission for the City of New Orleans.[5]

---

[4] NOPD Rule 2, Moral Conduct, Paragraph 6, Unauthorized Force provides:

> Employees shall not use or direct unjustifiable physical abuse, violence, force or intimidation against any person.

[5] **RULE IX DISCIPLINARY ACTIONS**
   **MAINTAINING STANDARDS OF SERVICE**

Section 1.
      1.1 When an employee in the classified service is unable or unwilling to perform the duties of his/her position in a satisfactory manner, or has committed any act to the prejudice of the service, or has omitted to perform any act it was his/her duty to perform, or otherwise has become subject to corrective action, the appointing authority shall take action warranted by the circumstances to maintain the standards of effective service. The action may include one or more of the following: (a) termination from the service. (amended January 21, 1988, effective February 1, 1988) (b) involuntary retirement. (adopted June 10, 1982) (c)

3

Officer Mykulak appealed the suspension to the Commission.

A sufficiency hearing was held over the course of two days before a Hearing Examiner. During the hearing, testimony was elicited from several witnesses and the BWC footage was reviewed. The Hearing Examiner acknowledged the relevant facts were not in dispute and framed the issue in terms of whether Officer Mykulak acted reasonably and whether any facts should have been considered in mitigation. The inaccuracies were recognized throughout the Hearing Examiner's Report, which provided in pertinent part:

> "[t]he investigation had a lot of gaps and reflects some uncertainty regarding the actions and intent of Mykulak …the disciplinary letter itself was filled with inaccuracies, for example it said that Mykulak had his foot on the subject's neck, a false and serious charge. This is quite different from a knee on the back. Burns also claimed that Mykulak picked up and dropped the arrested man, also untrue."

Ultimately, the Hearing Examiner concluded that the NOPD satisfied its burden of proof, by a preponderance of evidence, that Officer Mykulak restrained a suspect with handcuffs, placed him face down, stood over him, and pressed his knee against the suspect's back two times and removed it when asked by the suspect. Concluding that Officer Mykulak's lack of intent should have been considered as a mitigating factor, the Hearing Examiner recommended a sixty (60) day suspension rather than an eighty (80) day suspension.

---

reduction in pay within the pay grade for the employee's classification, subject to the provisions of Rule IV, Section 3. A reduction in pay includes involuntary time away from work without pay, no matter how brief (e.g., involuntary leave without pay). (amended September 27, 1990, amended February 17, 2014) (d) demotion to any position of a lower classification that the employee is deemed by the Appointing Authority and the Director to be competent to fill, accompanied by a reduction in pay which is within the pay grade range for the lower classification, subject to the provisions of Rule IV, Section 3. (amended September 27, 1990) (e) suspension without pay not exceeding one hundred twenty (120) calendar days. (f) fine. (g) letters of reprimand as defined in Rule I. (amended February 17, 2014) (Section 1.1. (a)-(f) and amended June 10, 1982, effective June 10, 1982, Section 1.1 (c) and (g), amended February 17, 2014, effective March 1, 2014) 1.2 In every case of termination of employment of a regular employee, the appointing authority shall conduct a pre-termination hearing as required by law and shall notify the employee of the disciplinary action being recommended prior to taking the action.

The Commission reviewed the hearing transcripts, exhibits and the Hearing Examiner's Report and concluded that Officer Mykulak applied excessive pressure to the suspect's back while the suspect was in a prone and handcuffed position. The Commission found that such unauthorized use of force impairs the efficient operations of the NOPD and that the penalty of eighty (80) days was commensurate with Officer Mykulak's violation.

Officer Mykulak sought rehearing of the Commission's decision arguing that Lt. Burns' inaccuracies were so grave as to constitute a violation of his due process rights. He also complained that he was not provided with adequate notice of the allegations against him. Specifically, he maintained that the January 20, 2021 suspension letter did not raise the issue of endangering a suspect with positional asphyxia; thus, he was not afforded an opportunity to properly defend himself. The motion for rehearing was denied with reasons. In its reasons, the Commission recognized that the January 20, 2021 suspension letter contained inaccuracies but pointed out that its conclusion was based solely on the finding that Officer Mykulak used excessive pressure on a handcuffed suspect while the suspect was in a prone position.

Officer Mykulak now appeals the Commission's decision upholding the eighty (80) day suspension to this Court.

**GOVERNING LEGAL PRECEPTS AND STANDARD OF REVIEW**

On appeal, the standard of review in a case from the Civil Service Commission is established by the constitutional rule that the Commission's decision is subject to review on any question of law or fact. La. Const. art. X, § 12. A multifaceted standard of appellate review applies. First, as in other civil matters, deference must be given to the Commission's factual findings, which should not be disturbed unless manifestly erroneous or clearly wrong. *Regis v. Dep't of Police*, 2012-1043, p. 5 (La.App. 4 Cir. 12/12/12), 107 So.3d 790, 793. Second, in

evaluating the Commission's determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, "the appellate court should not modify the Commission's decision unless it is arbitrary, capricious, or characterized by an abuse of discretion." *Id.* (Citation omitted). Arbitrary or capricious means there is no rational basis for the action taken by the Commission. *Id.*; *Williams v. Dep't of Police*, 2008–0465, p. 7 (La.App. 4 Cir. 10/22/08), 996 So.2d 1142, 1146; *Bankston v. Dep't of Fire*, 2009–1016, p. 7 (La.App. 4 Cir. 11/18/09), 26 So.3d 815, 820.

Classified civil service employees with permanent status may be disciplined only for cause expressed in writing. La. Const., Art. X, § 8(A). New Orleans police officers are included in the protection guaranteed by this provision. *Walters v. Dep't of Police of City of New Orleans*, 454 So.2d 106, 112 (La. 1984). "Legal cause exists whenever an employee's conduct impairs the efficiency of the public service in which the employee is engaged." *Cittadino v. Dep't of Police*, 558 So.2d 1311, 1315 (La.App. 4 Cir. 1990) (citation omitted). Thus, the appointing authority must prove, by a preponderance of the evidence, the occurrence of the complained of activity and that the conduct did in fact impair the efficient and orderly operation of the public service. *Id.*; *See also Cure v. Dep't of Police*, 2007–0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094 (*citing Marziale v. Dep't of Police*, 2006–0459, p. 10 (La.App. 4 Cir. 11/8/06), 944 So.2d 760, 767)) (citation omitted).

In applying these standards, an appellate court must make two determinations: "(1) whether the appointing authority had good or lawful cause for taking the disciplinary action, and (2) whether the punishment the appointing authority imposed is commensurate with the offense." *Harris v. Dep't of Fire*, 2008–0514, p. 11 (La.App. 4 Cir. 7/16/08), 990 So.2d 54, 62 (citing *Staehle v. Department of Police*, 1998–0216, p. 3 (La. App. 4 Cir. 11/18/98), 723 So.2d

6

1031, 1033). To establish that it had cause, the appointing authority must prove two factors: (i) that the complained of conduct occurred, and (ii) that the complained of conduct impaired the efficiency of the Department. *Harris*, 2008–0514, p. 11, 990 So.2d at 62.

## DISCUSSION

The crux of Officer Mykulak's argument is that the Commission erred in upholding the eighty (80) day suspension as the NOPD failed to meet its burden of proving a violation of NOPD Rule 2, Moral Conduct, Paragraph 6, Unauthorized Force.[6] He maintains that the initial complaint and investigation by Lt. Burns was so inherently biased, flawed and devoid of credibility and evidence that it obviates the decision of the Commission. Officer Mykulak's assignments of error intertwine both procedural and substantive arguments. Thus, for ease of discussion, we will address the two procedural arguments - timeliness and notice - prior to discussion of the merits of the substantive arguments - whether the Commission's decision is arbitrary and capricious.

### PROCEDURAL CHALLENGES: TIMELINESS AND NOTICE

Officer Mykulak argues this case should be dismissed as a result of two procedural errors: (1) the NOPD failed to comply with the timeliness requirement set forth in La. R.S. 40:2531(B)(7)[7] and (2) his due process rights were violated as the NOPD failed to advise him of the specific fact that he was being accused of, namely, placing a suspect who was in a prone position in danger of suffering positional asphyxia.

---

[6] Before the Commission, "the burden of proof on appeal, as to the facts, shall be on the appointing authority." La. Const. Art. X, § 8(A).

[7] La. R.S. 40:2531(B)(7) provides, "[w]hen a formal, written complaint is made against any police employee or law enforcement officer, the superintendent of state police or the chief of police or his authorized representative shall initiate an investigation within fourteen days of the date the complaint is made. Except as otherwise provided in this Paragraph, each investigation of a police employee or law enforcement officer which is conducted under the provisions of this Chapter shall be completed within sixty days."

**TIMELINESS**

Officer Mykulak maintains that the PIB investigation, initiated on April 20, 2020, is an unlawful attempt to circumvent the timeliness requirement of La. R.S. 40:2531(B)(7). Officer Mykulak also points out that an investigation into the events of the February 20, 2020 arrest had been previously concluded on March 26, 2020. Although Officer Mykulak elicited witness testimony during the sufficiency hearing regarding the timeliness of the investigation, we find that neither a formal nor an oral motion was made. *See Gant v. New Orleans Police Dep't*, 2019-0640 (La.App. 4 Cir. 12/4/19), p. 8, 286 So.3d 524, 530 (counsel provided testimony related to untimeliness of the investigation but failed to make a formal motion on the record). Neither the Hearing Examiner's Report nor the Commission's Opinion addresses the issue of timeliness. Accordingly, we decline to consider this issue raised for the first time on appeal. *See Gant*, 2019-0640, p. 8, 286 So.3d at 530-31.

**NOTICE**

Officer Mykulak argues that the NOPD violated his due process rights by failing to put him on notice regarding the claim of placing a suspect in danger of suffering positional asphyxia. He also submits that the NOPD only informed him that he was disciplined for unauthorized use of force by placing his knee in a suspect's back.

This Court has determined that an employer cannot subject a permanent classified civil service employee to disciplinary action, unless given notice and afforded an opportunity to respond to the charges against them. *Rivet v. Dep't of Police*, 2018-0229, pp. 11-12 (La.App. 4 Cir. 10/24/18), 258 So.3d 111, 120. The appointing authority "is required to afford an employee notice of the 'reasons' for disciplinary action." *Rivet*, 2018-0229, p. 12, 258 So.3d at 120-121 (quoting *Ellins v. Dep't of Health*, 505 So.2d 74, 76 (La.App. 4th Cir. 1987) (citation omitted). An

8

employee must be informed of the time, place, and nature of the alleged misconduct in sufficient detail to allow the employee to prepare an adequate defense. *Rivet*, 2018-0229, p. 12, 258 So.3d at 121 (citation omitted).

On January 21, 2021, Officer Mykulak was informed, in a disciplinary letter, of his eighty (80) day suspension resulting from a finding of a violation of NOPD Rule 2, Moral Conduct, Paragraph 6, Unauthorized Force. Specifically, the letter states that Officer Mykulak violated the rule when he delivered an intentional downward knee strike to a handcuffed and compliant individual during an arrest on February 21, 2020. Although the words "positional asphyxiation" are not contained in the letter, the letter clearly describes the complained of activity. Further, Officer Mykulak presented testimony at the hearing that he did not use unauthorized force but rather slipped. He argued that the knee strike into the suspect's back was not intentional. Thus, the disciplinary letter and defense presented by Officer Mykulak at the hearing and before the Commission suggests that he was thoroughly aware of the charges levied against him. We therefore find that the NOPD gave adequate written notice to Officer Mykulak regarding his violation of the rule.

## WHETHER THE DECISION OF THE COMMISSION WAS ARBITRARY AND CAPRICIOUS

Officer Mykulak challenges the Commission's decision to uphold his eighty (80) day suspension arguing that the NOPD's investigation of the complaint was biased, flawed, and devoid of credibility and evidence. We will first address his contention regarding the complaint and investigation before considering the overarching issue of whether the Commission's decision was arbitrary and capricious.

The Hearing Examiner's Report indicates that prior to the sufficiency hearing, Officer Mykulak requested an investigation into Lt. Burns involvement in the complaint and the investigation. The NOPD filed a motion to quash, which

was granted, leaving open the opportunity for the motion to quash to be re-urged if relevant facts related to it were adduced. Although the January 20, 2021 letter contains several inaccuracies, these inaccuracies were considered by both the Hearing Examiner and the Commission. As discussed in greater detail below, the Commission focused its review of the imposition of the discipline on the narrow issue of whether Officer Mykulak violated the unauthorized force rule. Our review of the Commission's Report confirms that the Commission upheld its duty to consider the facts independently from those presented by the NOPD and focused its determination on whether the NOPD had good and lawful cause for taking the disciplinary action and whether the punishment imposed was commensurate with the infraction. *See, e.g., Walters*, 454 So.2d 106, 112 (La. 1984).

We now turn to the overarching issue of whether the Commission's decision to uphold the eighty (80) day suspension was arbitrary and capricious. In *Hardy v. Juvenile Justice Intervention Ctr.*, 2022-0030, p. 5-7 (La.App. 4 Cir. 6/16/22), 343 So.3d 288, 293–94, we articulated the following foundational principle: the Commission's "final decision is 'subject to review on any question of law or fact upon appeal to the court of appeal wherein the commission is located.'" La. Const. Art. X, § 12(A). An appeal from a final decision of the Commission, thus, is to this Court. In an appeal from the Commission, this Court must engage in a multifaceted review, which the Louisiana Supreme Court has described as follows:

> Initially, deference should be given to the factual conclusions of the civil service commission. A reviewing court should apply the clearly wrong or manifest error rule prescribed generally for appellate review. Then, the court must evaluate the commission's imposition of a particular disciplinary action to determine if it is both based on legal cause and is commensurate with the infraction; the court should not modify the commission's order unless it is arbitrary, capricious, or characterized by abuse of discretion. "Arbitrary or capricious" means the absence of a rational basis for the action taken; "abuse of discretion" generally results from a conclusion reached capriciously or in an arbitrary manner.

*Mathieu v. New Orleans Pub. Library*, 2009-2746, pp. 5-6 (La. 10/19/10), 50 So.3d 1259, 1262-63 (internal citations omitted).

The Commission found that Officer Mykulak used unauthorized force when he placed his knee on the back of the suspect who was handcuffed on the ground and in a prone position. Specifically, the Commission determined that Officer Mykulak did not use the appropriate amount of force in light of the circumstances. We find these conclusions supported by the evidence. Although Officer Mykulak maintains that he slipped and was out of breath from his struggles with the suspect, he does not refute that his knee made contact with the suspect's back. Such conduct diminishes the public's confidence in the NOPD. The BWC footage supports this fact.

As to the penalty imposed, the Commission determined that the NOPD imposed the penalty for a level four use of force under the NOPD's disciplinary matrix. The eight (80) day suspension is commensurate with the violation committed by Officer Mykulak.

The Commission weighed the evidence and found that Officer Mykulak used excessive force when delivering pressure to a compliant and handcuffed suspect during the February 21, 2020 arrest. This Court must afford deference to the factual conclusions of the Commission. *See Stephens v. New Orleans Police Dep't*, 2019-0641, pp. 7-8 (La.App. 4 Cir. 12/4/19), 286 So.3d 519, 524. The Commission determined that the evidence submitted by the NOPD was sufficient to satisfy its burden of proof and that the penalty was commensurate with the NOPD's disciplinary matrix. Thus, we will not disturb the conclusions of the Commission as those conclusions are not contrary to the evidence.

## CONCLUSION

This Court will not modify a decision of the Commission absent a finding that the Commission's decision is clearly or manifestly erroneous. *See Stephens*,

11

2019-0641, p. 8, 286 So.3d at 524. The record before this Court does not warrant such a finding. Accordingly, we affirm the Commission's decision to uphold Officer Mykulak's eighty (80) day suspension.

## **DECREE**

For the aforementioned reasons, we affirm the Commission's decision to uphold Officer Mykulak's suspension for violating NOPD Rule 2, Moral Conduct, Paragraph 6, Unauthorized Force.

**AFFIRMED**