| | | |
|---|---|---|
| ISAIAH SHANNON | * | NO. 2023-CA-0003 |
| VERSUS | * | COURT OF APPEAL |
| NEW ORLEANS POLICE DEPARTMENT | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 9322  C\W 9323
\* \* \* \* \* \*
**JUDGE SANDRA CABRINA JENKINS**
\* \* \* \* \* \*

(Court composed of Judge Sandra Cabrina Jenkins, Judge Paula A. Brown, Judge Nakisha Ervin-Knott)

Kevin Vincent Boshea
Angad Ghai, Esq.
Roger Williams Jordan, Jr.
ATTORNEY AT LAW
2955 Ridgelake Drive
Suite 207
Metairie, LA 70002

 COUNSEL FOR PLAINTIFF/APPELLANT

Elizabeth Robins
Donesia D. Turner
Corwin M. St. Raymond
CITY ATTORNEY
1300 Perdido Street
City Hall - Room 5E03
New Orleans, LA 70112

 COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**AUGUST 18, 2023**

SCJ
PAB
NEK

Officer Isaiah Shannon appeals the Civil Service Commission's (the "Commission") decision that denied in part and granted in part his appeal. Finding that the New Orleans Police Department ("NOPD") established legal cause for taking disciplinary action and terminating Officer Shannon, we affirm the Commission's decision.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 10, 2021, Officer Shannon and his partner, Officer Markus Caldwell conducted a traffic stop at the 4300 block of Werner Drive. Officer Shannon observed a white Jaguar sedan illegally parked across from a store, and he was suspicious that the occupants were engaged in drug dealing. Officer Shannon un-holstered his gun and placed it behind his back as he approached the passenger side of the vehicle, while his partner approached the driver's side of the vehicle. Thereafter, Officer Shannon asked the passenger, Anthony Cowart, to exit the vehicle and the Mr. Cowart attempted to flee. A physical altercation ensued between Officer Shannon and Mr. Cowart. During the altercation, Officer Shannon struck Mr. Cowart in the head with his firearm. Following the strike, Officer

1

Shannon's firearm discharged, hitting Mr. Cowart in the right leg. Subsequent to the discharge of the firearm, the driver re-entered the sedan and fled the scene. Officer Shannon handcuffed Mr. Cowart with a pair of hinged handcuffs that were unapproved by the NOPD policy. After emergency medical services were requested, Officer Shannon used his pocket knife to cut the Mr. Cowart's sweatshirt, where he removed a bag of narcotics from Mr. Cowart.

On March 12, 2021, the NOPD supplied Officer Shannon with his body worn camera footage to assist him in completing a use of force statement. In his statement he provided that he un-holstered his firearm after he arrived at the vehicle and observed what he believed to be a gun in the console of the vehicle. Officer Shannon also failed to disclose in his statement that he hit Mr. Cowart with his firearm. The NOPD did not provide Officer Shannon with Officer Caldwell's body worn camera footage or the surveillance video from the store.

On November 9, 2021, a superintendent's committee disciplinary hearing was held to address Officer Shannon's possible tactical errors and violations of the NOPD's policy. During the hearing, Officer Shannon acknowledged his tactical error of drawing out his firearm prior to approaching the vehicle. The disciplinary hearing committee recommended the following dispositions and penalties:

1) Failure to activate in-car camera (Rule 4, Paragraph 4, Sub-paragraph (c)(6) relative to NOPD Operations Manual Ch. 41.3.8 In-Car Camera Policy) - two-day suspension

2) Drawing weapon on a traffic stop without an articulable reason (Rule 4, Paragraph 4, Sub-paragraph (c)(6) relative to NOPD Operations Manual Ch. 1.3 Use of Force Policy, Paragraph 11) - one-day suspension

3) Jeopardizing safety through poor tactical decisions (Rule 4, Paragraph 2, relative to NOPD Operations Manual Ch. 1.3 Use of Force Policy, Paragraph 2) - five-day suspension

4) Unauthorized strike to the head with weapon (Rule 2, Paragraph 4, Unauthorized Force) - Dismissal [aggravated up from presumptive 80 days under the Disciplinary Matrix]

5) Unauthorized gunshot to the leg (Rule 2, Paragraph 4, Unauthorized Force) - Dismissal [aggravated up from presumptive 80 days under the Disciplinary Matrix]

6) Use of unauthorized Smith & Wesson 300 hinged handcuffs (Rule 4, Paragraph 4, Sub-paragraph (c)(6) relative to NOPD Operations Manual Ch. 1.3.1 Handcuff Policy, Paragraph 14 – one-day suspension

7) Failure to promptly provide medical attention (Rule 4, Paragraph 6, Sub-paragraph (c)(6) relative to NOPD Operations Manual Ch. 1.3 Use of Force Policy, Paragraph 7) – one-day suspension

8) Cutting suspect's shirt to access seizure (Rule 4, Paragraph 6, Sub-paragraph (c)(6) relative to NOPD Operations Manual Ch. 1.3.4 Search and Seizure Policy, Paragraph 12 - one-day suspension

9) Courtesy violation (Rule 2, Paragraph 2) - letter of reprimand

10) False or Inaccurate Force Statement (Rule 6, Official Information, Paragraph 2) - Dismissal

11) Mandatory training requirements violation (Rule 4, Paragraph 4 relative to NOPD Operations Manual Ch. 33.1 Training) - five-day suspension

On November 9, 2021, NOPD's Superintendent, Shaun Ferguson issued a disciplinary letter, terminating Officer Shannon.  Officer Shannon timely appealed his termination and suspension to the Commission. On February 24, 2022 and April 7, 2022, Civil Service hearings took place before Hearing Examiner Jay Ginsberg. The hearing examiner recommended that Officer Shannon's appeal be granted in part and denied in part, specifying that the Officer Shannon's appeals of unauthorized use of force and false or inaccurate reports should be granted, and the appointing authority be ordered to reinstate Officer Shannon with back pay and emolument of employment less the days of suspension. The hearing examiner further recommended that Officer Shannon's appeals of in-car camera activation

violation, authority to use reasonable force violation, use of force statement violation, use of restraints violation, search and seizure violation, and mandatory training requirements violation should be denied, resulting in a combined suspension of fourteen days.

On October 27, 2022, the Commission denied in part and granted in part Officer Shannon's appeal, noting that it denied the following appeals: 1) drawing weapon on a traffic stop without an articulable reason, 2) jeopardizing safety through poor tactical decisions, 3) use of unauthorized Smith & Wesson 300 hinged handcuffs, and 4) false or inaccurate force statement. The Commission further noted that it granted the following appeals: 1) unauthorized strike to the head with a weapon, 2) unauthorized gunshot to the leg, and 3) cutting suspect's shirt to access seizure is granted. The Commission explained that because it denied the appeal of Officer Shannon's termination of employment, no relief is appropriate. Officer Shannon now appeals the Commission's decision.

## STANDARD OF REVIEW

The La. Const. art. X, § 8 provides in pertinent part, "[n]o person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing." An appellate court's "review in a case from the Civil Service Commission is established by the constitutional rule that the Commission's decision is subject to review on any question of law or fact." *Mykulak v. New Orleans Police Dep't*, 2022-0578, p. 5 (La. App. 4 Cir. 3/16/23), 359 So.3d 1028, 1033 (citing La. Const. art. X § 12). "A multifaceted standard of appellate review applies." *Id*. First, "deference must be

4

given to the Commission's factual findings, which should not be disturbed unless manifestly erroneous or clearly wrong." *Id*. (citing *Regis v. Dep't of Police*, 2012-1043, p. 5 (La. App. 4 Cir. 12/12/12), 107 So.3d 790, 793). "Second, in evaluating the Commission's determination as to whether the disciplinary action is based on legal cause and commensurate with the infraction, 'the appellate court should not modify the Commission's decision unless it is arbitrary, capricious, or characterized by an abuse of discretion.'" *Id.* at pp. 5-6, 359 So.3d at 1033.

A civil service "employee subjected to disciplinary action by an appointing authority has the right to appeal to the Commission." *Martin v. Dep't of Fire*, 2021-0070, p. 3 (La. App. 4 Cir. 10/20/21), 331 So.3d 379, 382 (citing *Honore' v. Dept. of Public Works*, 2014-0986, p. 8 (La. App. 4 Cir. 10/29/15), 178 So.3d 1120, 1126). As the appointing authority, NOPD is "charged with the operation of [its] department and it is within [its] discretion to discipline an employee for sufficient cause." *Bell v. Dep't of Police*, 2013-1529, p. 5 (La. App. 4 Cir. 5/21/14), 141 So.3d 871, 874 (quoting *Pope v. New Orleans Police Dep't*, 2004-1888, p. 6 (La. App. 4 Cir. 4/20/05), 903 So.2d 1, 4). "[T]he appointing authority must prove by a preponderance of the evidence good or legal cause for taking disciplinary action." *Martin*, 2021-0070, p. 3, 331 So.3d at 382 (citing *Honore'*, 2014-0986, p. 8, 178 So.3d at 1126). "Legal cause exists whenever an employee's conduct impairs the efficiency of the public service in which the employee is engaged." *Bell*, 2013-1529, p. 5, 141 So.3d at 874 (quoting *Pope*, 2004-1888, p. 6, 903 So.2d at 5).

## DISCUSSION

The crux of Officer Shannon's argument is that the Commission erred in finding that the appointing authority had sufficient legal cause to terminate him

and in upholding his suspensions for three additional violations. Officer Shannon also maintains that the Commission erred in not granting his motion to recuse the appointing authority on the grounds of conflict of interest.

### *Motion to Recuse*

Officer Shannon contends that on May 9, 2022, it was discovered that he, the police superintendent, and the appointing authority were jointly sued by Mr. Cowart in federal court. Officer Shannon argues that the appointing authority should have recused itself because it has a direct monetary interest in the outcome of the lawsuit.

The record provides that the Civil Service hearings occurred on February 24, 2022 and April 7, 2022, and Officer Shannon's motion to recuse was filed with the Civil Service Department on June 16, 2022. Thus, the motion to recuse was not addressed at the hearings or in the Commission's decision.

"It is well settled that appellate courts will not consider issues raised for the first time, which are not pleaded in the court below and which the district court has not addressed." *Hardy v. Juvenile Justice Intervention Center*, 2021-0715, p. 5 (La. App. 4 Cir. 6/15/22), 342 So.3d 1076, 1080 (citing *Council of City of New Orleans v. Washington*, 2009-1067, pp. 3-4 (La. 5/29/09), 9 So.3d 854, 856). Accordingly, this assignment of error is precluded from consideration.

### *Termination for Inaccurate Report*

The NOPD Disciplinary Matrix outlines the penalty ranges that should be given for particular violations of the NOPD policies. Rule 6, Paragraph 2 provides that "[a]n employee shall not knowingly make, or cause or allow to be made, a false or inaccurate oral or written record or report of an official nature, or

6

intentionally withhold material matter from such report or statement." The penalty for a violation of Rule 6, Paragraph 2, a level G offense is dismissal.

Officer Shannon challenges the Commission's decision in upholding that there was sufficient legal cause for his termination. First, Officer Shannon contends that he was terminated due to the omission of one sentence from a Use of Force Report. Officer Shannon also maintains that the NOPD denied him sixty-six percent of the available relevant evidence to review prior to the completion of the report and intentionally denied him the opportunity to complete a more thorough document.

At the February 24, 2022 hearing, Sgt. John Helou testified that he was assigned to the Public Integrity Bureau ("PIB")-Force Investigation Team.

> MR. LAUGHLIN [for NOPD]: Did you review anything before initiating this DI-1[formal disciplinary investigation]?
>
> SGT. HELOU: I did.
>
> MR. LAUGHLIN: Okay. And what did you review?
>
> SGT. HELOU: Body worn camera footage from Officer Shannon and Caldwell. There was some surveillance video from the Eastside Cash & Carry convenience store. And I reviewed Officer Shannon's and Caldwell's respective force statements that they completed following the incident.
>
> \* \* \*
>
> MR. LAUGHLIN: Under NOPD rules and in the Consent Decree, is an NOPD officer required to give a Force Statement after an incident involving force?
>
> SGT. HELOU: Yes.
>
> MR. LAUGHLIN: Okay. Did you invite him into the PIB office?
>
> SGT. HELOU: I did, yes.
>
> MR. LAUGHLIN: And he's entitled to have counsel?

7

SGT. HELOU: Yes.

* * *

MR. LAUGHLIN: Okay. Did you also make Officer Shannon's body worn camera video available to him?

SGT. HELOU: It was.

MR. LAUGHLIN: Okay. And you gave that to him on a laptop?

SGT. HELOU: It was a laptop that was connected to a flat-screen TV mounted on the wall.

MR. LAUGHLIN: Okay. Do you [sic] also give him a quick reference form to identify all the things he's supposed to put in his Force Statement?

SGT. HELOU: Yes, sir.

* * *

MR. LAUGHLIN: What is a Force Statement?

SGT. HELOU: Basically, it's a detailed account of everything leading up to the -- the force, you know, why the officer was present, you know, was it a call for service, was it self-initiated, anything that the officer knew beforehand prior to interaction, what occurred during the interaction, the specific force that was used in its entirety, and then what occurred during the aftermath.

Sgt. Helou also provided the reason why Officer Shannon was not provided all of the videos prior to writing the use of force statement.

MR. BOSHEA [for Officer Shannon]: Why weren't we allowed to look at all the videos, sir?

SGT. HELOU: So I know under NOPD policy, when you're doing a Force Statement, you're allowed to look at your own video. And I remember and I even documented in the investigation that you asked about the existence of other videos, which I told you they were, and a request was never made to view those videos.

Further at the hearing, Officer Shannon testified to the inaccuracies in his use of force statement.

MR. GHAI [for Officer Shannon]: I want to ask you about your use of force statement. Your use of force statement was previously admitted

8

as NOPD Number 9. What date did you give your use of force statement, if you can remember?

OFFICER SHANNON: Maybe one or two days after the incident.

MR. GHAI: When you gave your use of force statement, did you have the opportunity to review Officer Caldwell's body worn camera?

OFFICER SHANNON: No. I did not.

MR. GHAI: Did you have the opportunity to review anything other than your own body worn camera?

OFFICER SHANNON: No. Just my body worn camera.

MR. GHAI: Was it your intent to deceive [Sgt.] Helou, NOPD or anyone, when you wrote the use of force statement the way you wrote it?

OFFICER SHANNON: No. Never my – no. That wasn't even on my mind.

Officer Shannon further testified that when he made his statement, he believed that he drew his weapon when he arrived at the passenger side door. Officer Shannon also agreed that his weapon was un-holstered before he made contact with the individual. Further, Officer Shannon testified that he provided in his use of force statement that he engaged in a physical altercation, and agreed that he did not list the strike to Mr. Cowart's head.

The field operations bureau deputy superintendent, Chief John Thomas, testified that Officer Shannon's actions portrayed as if the NOPD were intentionally shooting people, which affects the operation of the department. Chief Thomas further testified that Officer Shannon's actions affected the operations of the department by portraying that the police department conducts rogue activities, which would affect the community's opinion that would sit on a jury.

In *Gant v. New Orleans Police Dep't*, 2019-0640 (La. 4 Cir. 12/4/19), 286 So.3d 524, this Court reviewed whether the Commission acted arbitrarily and

9

capriciously in upholding the NOPD's dismissal of a sergeant. The sergeant in *Gant* duties consisted of "fleet management wherein she was responsible for tracking and reporting the mileage of city owned vehicles assigned to" the NOPD's Investigation and Support Bureau ("ISB") personnel. *Gant*, 2019-0640, p. 1, 286 So.3d at 527. An NOPD policy mandated that a take-home vehicle shall not be assigned to an employee when the one-way driving distance from the employee's actual domicile to the employee's primary reporting work site is greater than forty miles. *Id.* at pp. 1-2, 286 So.3d at 527. The policy additionally required a payroll deduction for use of a take-home vehicle. Employees who lived within twenty miles of their work site received a $24.04 weekly deduction, while employees who lived greater than twenty miles from their work site received a $72.12 weekly deduction. *Id.* at p. 2, 286 So.3d at 527.

The sergeant stipulated that the distance between her marital residence and the ISB offices was greater than forty miles, and her husband's apartment was less than forty miles from the ISB offices. The sergeant's husband provided that she never had a key to the apartment, and that in 2015, he no longer had access to the apartment after the lease expired. *Id.* at pp. 2-3, 286 So.3d at 527-28.

In 2016, the sergeant executed a take-home vehicle form and listed the apartment address. The sergeant affirmed that she was aware of the policies regarding take-home vehicles and that the one-way driving distance between her actual domicile and her primary work site was approximately thirty-seven miles. Thereafter, in 2018, the sergeant was investigated for irregularities in the NOPD's payroll system regarding her take-home vehicle. It was discovered that the sergeant occasionally used the log-in of a subordinate to access the NOPD's payroll system and enter mileage ranges associated with her take-home vehicle. *Id.* at p. 3, 286

10

So.3d at 528. The sergeant "manually selected the 0-20 miles range option instead of the 20-40 miles range option." *Id.* at pp. 3-4, 286 So.3d at 528. The sergeant "contended the erroneous payroll entries were an unintentional mistake, and filed a series of payroll adjustment forms to repay the monetary amounts that should have been properly deducted from her payroll." *Id.* at p. 3-4, 286 So.3d at 528.

The sergeant was dismissed pursuant to Rule 6, Paragraph 2 charges as to the take-home vehicle form and payroll entries. The Commission denied the sergeant's appeal. This Court noted that the Commission weighed the evidence and determined the NOPD established that the sergeant knowingly violated Rule 6, Paragraph 2 in falsifying both the take-home vehicle form and the payroll entries. The Court noted that "Rule 6, Paragraph 2 (as a level G violation) does not allow for any mitigation." *Id.* at p. 13, 286 So.3d at 533.

Further, the Commission found persuasive "the NOPD's argument that severe penalties should accompany violations of Rule 6, Paragraph 2 because it would be problematic if such a compromised officer be required to serve as a material witness in a criminal prosecution." *Id.* at p. 14, 286 So.3d at 533. In upholding the termination, the *Gant* court provided that as "'[t]he public puts its trust in the [NOPD] as a guardian of its safety,' the NOPD should 'be allowed to establish and enforce appropriate standards of conduct for its employees sworn to uphold that trust.'" *Id.* at p. 15, 286 So.3d at 534 (quoting *Rivet v. Dep't of Police*, 2018-0229, p. 8, (La. App. 4 Cir. 10/24/18), 258 So.3d 111, 118).

In the present case, similar to *Gant*, Officer Shannon argues that the appointing authority failed to take into consideration his outstanding NOPD record, and mitigating factors such as his honorable military discharge and thirteen-year

career with NOPD. However, Rule 6, Paragraph 2 does not allow for any mitigation. *See Gant*, 2019-0640, p. 13, 286 So.3d at 533.

The Commission noted that it did not "find Officer Shannon's explanation for the inaccuracies in his force statement to be credible." The Commission further noted that Officer Shannon testified that he did not remember the exact moment he un-holstered his weapon, and reported a physical altercation in lieu of a strike to Mr. Cowart's head with his firearm. The Commission explained that Officer Shannon knowingly provided a false statement about when he un-holstered his firearm and intentionally withheld information about striking Mr. Cowart with the firearm. Like *Gant*, testimony from Sgt. Helou confirmed that false or inaccurate reporting impairs the efficient operations of the NOPD because it affects an officer's credibility in the community and in court. In determining that Officer Shannon's termination was commensurate with the offense of a violation of Rule 6, Paragraph 2, the Commission noted that the "NOPD must be able to rely on the truthfulness of its officers, especially in the context of unauthorized force and the officer's belief that the suspect has a weapon."

"Great deference should be afforded to the Commission's ruling upholding the disciplinary decision of the NOPD – 'neither the [Commission] nor the reviewing court may serve as a *de facto* pardon board.'" *Gant*, 2019-0640, p. 14, 286 So.3d at 533 (quoting *Rivet*, 2018-0229, pp. 10-11, 258 So.3d at 120). Based on the facts and testimony, we find the Commission's decision to sustain Officer Shannon's termination was not arbitrary, capricious, or an abuse of discretion.

### Suspension for Three Violations of NOPD's Policy

Next, Officer Shannon argues that the Commission erred in upholding the following suspensions: 1) drawing weapon on a traffic stop without an articulable

12

reason; 2) jeopardizing safety through poor tactical decisions; and 3) use of unauthorized Smith & Wesson 300 hinged handcuffs. The Commission provided that because it denied the appeal of Officer Shannon's termination of employment, no relief was appropriate. In light of finding that the Commission's decision was reasonable, we pretermit discussion of Officer Shannon's remaining assignment of error.

## CONCLUSION

For the foregoing reasons, the Civil Service Commission's decision that denied Officer Shannon's appeal of his termination is affirmed.

**AFFIRMED**